87  427
95  601

CASE 65—PETITION EQUITY—SEPTEMBER 29.

## Scobee, &c., v. Bridges & Co., &c.

### APPEAL FROM HENRY CIRCUIT COURT.

1. DESCENT AND DISTRIBUTION — PURCHASER OF HEIR'S INTEREST—ADVANCEMENTS.—The estate of an intestate descends to the heir free of any lien for debts due by the heir to the estate, the estate standing as any other creditor of the heir.  Therefore, if a judgment creditor has the interest of the heir sold under execution before suit is brought for a settlement of the estate, or before any steps have been taken by the estate or the other heirs to acquire a lien, the purchaser will hold as against the other heirs, being required, however, to account, in the division of the estate, for advancements made by the intestate to the heir, as the heir himself would have been required to do, the purchaser acquiring no greater interest than the heir had in the estate.

    In this action by the purchasers, under an execution in their favor, of the undivided interest of a son in the estate of his deceased father, seeking to have the estate divided, it is held that money furnished by the father to the son, for which the son executed his notes with the understanding that they were to be accounted for out of the estate at his father's death, is to be regarded as an advancement, for which the purchasers must account in the division of the estate.

2. SAME—SUBROGATION.—The fact that the debts for which the land was sold were debts for which the father was liable as surety for the son does not affect the rights of the purchasers, the execution creditors, or furnish any reason for subrogating the heirs to their rights.

JOHN D. CARROLL FOR APPELLANTS.

1. The same rule applies in this case that would apply if it were a contest between a creditor of J. C. Scobee and the appellees, for the reason that the other heirs having paid the creditors, are substituted to the rights of the creditors.

2. Even if appellants are not substituted to the rights of the creditors

whom they paid, they have still a right to contribution from the es-
tate descended to J. W. Scobee.

3. Appellees are not protected by sec. 8 of art. 1, chap. 44, Gen. Stats., be-
cause:

*First.* J. W. Scobee did not, in the meaning of the statute, *alien*
his estate to them. (Blackstone, vol. 1, book 2, p. 287.)

*Second.* They are not *bona fide* purchasers. (Pomeroy's Equity
Jurisprudence, secs. 745, 747, 748, 749, 751, 762; Dickerson v. Tilling-
hast, 4 Paige (N. Y.), 215; s. c., 25 Am. Dec., 530; Wood v. Chapin,
13 N. Y., 509; s. c., 67 Am. Dec., 71; Williams v. Hollingworth, 1
Strobhart's Eq., 103; s. c., 47 Am. Dec., 532; Padget v. Lawrence, 10
Paige, 170; s. c., 40 Am. Dec., 237; Bush v. Bush, 3 Strobhart's Eq.;
s. c., 51 Am. Dec. 675; Nantz v. McPherson, 7 Mon., 597; Grim-
stone v. Carter, 3 Paige, 421; s. c., 24 Am. Dec., 230.)

If it is held that appellees take nothing by their purchase they are
in no worse position than before, for the reason that their executions
can be quashed and all proceedings had thereunder set aside, and they
restored to all the rights they had before the levy or sale. (3 Dana,
219; *Ibid.*, 252; 3 J. J. M., 709; 1 Bush, 167; *Ibid.*, 415; 7 Bush,
292.)

*Third.* Appellees did not acquire the *legal title* until after notice of
the equity of appellants  (Nantz v. McPherson, 7 Mon., 597; Hal-
bert v. McCulloch, 3 Met.; 2 Bibb., 416; Grimstone v. Carter, 3
Paige (Chy.), 42; s. c., 24 Am. Dec., 230.)

4. The three hundred and thirty dollars furnished to J. W. Scobee, by his
father, was an advancement, and the estate descended to him charged
therewith. Therefore, appellees must account therefor just as J. W.
Scobee would have been required to do.

WM. CARROLL FOR APPELLEES.

1. Appellants cannot be subrogated to the rights of creditors as against
appellees who have acquired the legal title.

2. The proof does not sustain the claim that the demands against J. W.
Scobee were advancements.

3. Appellees are *bona fide* purchasers (Pomeroy's Eq. Jur., vol. 2, secs.
745, 747), and, therefore, are protected by the statute. (Gen. Stats.,
chap. 44, art. 1, secs. 8, 9, 10.)

4. The court erred in applying for appellants' benefit principles of law
which could only be applied to creditors of the decedent who had
brought suit under sec. 10 of art. 1, chap. 44, Gen. Stats.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Christopher Scobee, at his death, was the owner of
a tract of land in the county of Henry, and left sur-

viving him several children. He died intestate, and his personal estate was insufficient to pay his debts. His son, J. W. Scobee, was indebted to the appellees. They, having reduced their debts to judgment, had an execution or executions issued and levied on the undivided interest of the son, J. W. Scobee, in the land that descended to him from his father. The land was sold and purchased by the appellees, who obtained a conveyance from the sheriff, and are now seeking a division of the land, claiming that they are the owners of J. W. Scobee's undivided interest. The other children are resisting the claim of the appellees on two grounds:

First. They say that their father was liable, as the surety of J. W. Scobee, on several notes, amounting to a considerable sum of money, and his personalty not being sufficient to pay his debts, his personal representatives filed a petition for a settlement of his estate and a sale of the land to pay the debts; that, among the debts for which the land was sold, were the debts for which the intestate was liable as the surety of his son, and before the individual creditors of J. W. Scobee can take this land purchased under the executions, they must account to the other heirs for the amount the estate has had to pay for their brother. There was no action pending for a settlement of the intestate's estate when the executions issued by the appellees on their judgment against J. W. Scobee, or any action pending by the administrator or heirs of the intestate under which any lien had been created on the land descending to J. W. Scobee from his father. The estate of the intestate stood

only as an ordinary creditor of the son, the latter becoming a debtor only to the personal representatives upon their payment of the debts due by the son, and for which the father was liable as the surety. The estate descended to the son free of any lien for the debts due to the father, and these creditors having levied their executions and purchased this interest of Jas. W. Scobee, will hold it as against any other creditor where no lien exists.

The statute gives no lien, and the most vigilant in acquiring a lien by operation of law will be entitled as against those who fail to coerce payment.

The second ground relied on is, that two notes executed by Jas. W. Scobee, the son, to his father, were given to evidence the amount of advancements made to him, and must be accounted for by James, or those claiming his interest in the division of the estate. The statute provides.

"Any real or personal property or money, given or devised by a parent or grandparent to a descendant, shall be charged to the descendant, or those claiming through him, in the division and distribution of the undivided estate of the parent or grandparent, and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendible and distributive share of the whole estate, real and personal, devised and undevised." (General Statutes, chapter 31, section 15.)

The notes claimed as advancements are executed in the ordinary mode, and amount, the principal, to three hundred and thirty dollars. It was held below that the money was not given as an advancement, and, there-

fore, only a debt, and no account was required to be taken in the division of the estate, with a view to producing equality.

There is a direct issue raised by the reply of the creditors as to whether the money was an advancement or gift by the testator. There are but two witnesses on this point, both of them sons of the intestate, and one the debtor. They both swear that the money was given and the notes to be collected or accounted for out of the portion of the estate going to J. W. Scobee, at his father's death. J. W. Scobee says the notes were executed after the money was given to him, and to evidence only the amount received by him in the way of advancements. That the money was given to the son the father repeatedly declared, and if such a gift is required to be accounted for by the heir in the division of the estate, the creditor purchasing the interest of the heir, under a coercive sale, acquires no greater interest than the heir had in the estate. These notes had been executed for years prior to the death of the intestate. His son was insolvent, and always had been, and if the testimony of the two sons is to be relied on, and there is nothing affecting their credibility in the record, the money evidenced by the notes was a gift and not the creation of a debt, and must be accounted for by the son in the division. The estate was small, and all the land has been sold for the payment of the intestate's debts but one hundred and sixteen acres, and this includes the widow's dower.

The appellees claim that their purchase under their executions gives them a perfect title as against the other heirs, by reason of section 8 of article 1, chapter

44, General Statutes, which provides: "When the heir or devisee shall alien, before suit brought, the estate descended or devised, he shall be liable for the value thereof, with legal interest from the time of alienation, to the creditors of the decedent or testator; but the estate so aliened shall not be liable to the creditors in the hands of a *bona fide purchaser* for valuable consideration."

This statute was evidently intended to apply to voluntary sales made by the heir upon whom the descent had been cast to a *bona fide* purchaser, and not to coercive sales made under an execution or other legal process.

The purchasers under this forced sale acquired no greater interest than the heir had; that interest subject to be enlarged or diminished (the parent dying intestate) by the advancements made, if any, to the various children.

It is insisted by counsel for the appellants that these appellees are not *bona fide* purchasers for value, first, because the debts for which judgment had been rendered were long since due, and further, that the appellees had notice, before the deed was made to them by the sheriff, of the pendency of the action for the settlement of the estate. We perceive nothing showing that these creditors had any notice whatever that Jas. W. Scobee was indebted to his father, and having levied their execution and obtained the legal title, we see no reason for subrogating the heirs to the rights of these creditors whose debts were paid by the father's estate by reason of his liability as surety, and paid after the legal title had been obtained.

The tenth section of chapter 44 seems to provide for the heir in a case like this. It provides that the heir may obtain, "by the proper procedure, a lien on any specified property descended or devised, not theretofore aliened, but not so as to prejudice thereby any other creditor." No lien was created on the land descended to J. W. Scobee by either the heirs or the administrator of the father before the legal title was acquired by these purchasers, and, therefore, they hold as against the heirs, accounting in the division of this land for the amount of the principal of the two notes executed by the son to the father.

The judgment is reversed, and the cause remanded, with directions to permit the appellees to pay this sum to the heirs, or if not, they will account for it in the division of the land between them.

———

On a petition for a modification, it is asked that the claim of the appellees be confined to the one hundred and sixteen acres, the balance of the land left after the sale made for the payment of the debts. We understand that this is the only land left about which the appellants and appellees can have any controversy. There is nothing else out of which the advancements can be equalized, and it therefore follows, so far as appears from this record, that the appellees take the interest of the heirs in the one hundred and sixteen acres, subject to the two notes, for which they must account, either by paying them or by obtaining less land in the division.