CASE 101—PETITION EQUITY—MAY 26.

# Thompson, &c., v. Myers, &c.

### APPEAL FROM BOONE CIRCUIT COURT.

1. AN HEIR OR DEVISEE TAKES THE LAND DESCENDED OR DEVISED TO HIM FREE FROM ANY LIEN FOR DEBTS DUE BY HIM TO THE ANCESTOR OR TESTATOR, such debts not being upon the same footing as advancements made to him.

   Where a creditor had his execution levied upon the undivided interest of his debtor in land devised to him, and at the sale under the execution became the purchaser, in a division of the testator's estate he was entitled to have allotted to him his debtor's share of the land devised, without any diminution on account of a debt due by the devisee to the testator.

2. WHERE A DEVISEE DIES BEFORE THE TESTATOR, his issue take as devisees directly under the will and not as his heirs-at-law, unless the will makes or requires a different disposition of the estate devised.

J. Q. WARD FOR APPELLANTS.

1. The children take the estate from their mother, or just as she would have taken it if she had survived her husband and died after him. (Gen. Stats., chap. 113, sec. 18.)

2. The real estate of a decedent descends to the heir free from any lien for debts due by the heir to the decedent, the estate of the decedent being upon the same footing as any other creditor of the heir. (Gen. Stats., chap. 31, sec. 15; Scobee v. Bridges & Co., 87 Ky., 427; Sadler v. Huffheimer, 11 Ky. Law Rep., 670.)

   Brown's Adm'r v. Mattingly, &c., 91 Ky., 275, criticised.

WM. H. HOLT AND S. W. TOLIN FOR APPELLEES.

1. The appellees did not take as heirs or distributees of Mrs. Myers, but they took under the will in their own right. (Carson, &c., v. Carson's Ex'or, &c., 1 Met., 300.)

2. The debtor is not entitled to anything out of the estate, until he accounts for what he owes. He already has that much of the estate and is chargeable with it in the division. Thompson, the creditor, could only sell the debtor's interest, whatever it might be, and could get no more. (Brown's Adm'r v. Mattingly, 91 Ky., 275.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1888 Joseph Myers died, leaving four children and

two children of a deceased son. He had, in 1884, executed a will, duly probated after his death, by which he devised his entire estate to his wife, Susan. But as she died first and the will did not make or require a different disposition of the estate devised, it resulted that his children and grandchildren, under sec. 18, chap. 113, Gen. Stats., as heretofore construed by this court, took it "not as heirs-at-law of the deceased devisee, but as legatees, directly and immediately under his will." Carson v. Carson's Ex'or, 1 Met., 300

It appears that all the legatees except one were indebted to the testator, as shown by their several promissory notes that went into hands of the executor. And they instituted this action for division of land left by him, according to their respective rights after charging each with his indebtedness. And to that end asked appointment of a commissioner to ascertain and report the amount each was indebted, and value of land subject to partition.

But appellant, Thompson, having a personal judgment against one of them, J. F. Myers, caused an execution issued and levied upon his undivided interest, being a fifth, in a track of about one hundred and sixty-five acres, which was regularly sold, he becoming purchaser and receiving the sheriff's deed therefor before the action was commenced. And, having been made a party defendant, he filed answer, setting up claim to and asking that a fifth of the land be allotted to him in virtue of his title to the interest of J. F. Myers, acquired in the manner mentioned.

But by the judgment rendered, the division and allotment is to be made in the following mode: To value of

the land, which the evidence shows is about five thousand dollars, is to be added aggregate indebtedness to the testator of all the legatees, amounting to about four thousand dollars, and the sum thus found divided into five parts; but the value to which each devisee is entitled to be fixed by deducting from the dividend, amount of his indebtedness. And as the amount of J. F. Myers' indebtedness is estimated at about one thousand six hundred and seventy-six dollars, it is manifest Thompson will get, under the judgment, much less than one-fifth in value of the tract of land.

If, as plainly appears, he acquired by purchase the legal title to an undivided fifth of land, prior to commencement of this action, he was entitled to have that quantity allotted to him without abatement, unless there was a pre-existing lien upon the interest of J. F. Myers.

The statute does not, it seems to us, create a lien in such cases expressly or by implication. Sec. 15, chap. 31, Gen. Stats., is as follows: " Any real or personal property or money given or devised by a parent or grandparent to a descendant shall be charged to the descendant, or those claiming through him, in the division and distribution of the undevised estate of the parent or grandparent, and such party shall receive nothing further therefrom, until the other descendants are made proportionately equal with him, according to his descendible and distributable share of the whole estate, real and personal, devised and undevised. The advancement shall be estimated according to the value of the property when given. The maintaining or educating, or the giving of money to a child or grandchild without any view to a portion or settlement in life shall not be deemed an advancement."

If the money loaned by the testator to his son, J. F. Myers, and for which he took and held to time of his death promissory notes, could be fairly regarded as advancements, then Thompson, purchaser of his interest, would be entitled in division of the land, to such quantity in value only as may be left after deducting from his share amount of the notes without interest. But it is not contended the notes are evidence of advancements made by the testator to his son, J. F. Myers, nor did the lower court treat them as advancements, upon which, under the section quoted, no interest could be counted, but as debts to which was added interest, whereby the estimated sum for which he should account, if an advancement, was doubled.

It seems to us a fair, indeed necessary, inference, that if the Legislature had intended to put debts due by an heir-at-law or devisee to the ancestor or testator upon the same footing as advancements made by him, there would be a statutory provision requiring such heir-at-law or devisee to account, in every case and at all events, for amount of such indebtedness, before he or his vendee or creditor could have any share of the estate. There is, however, a way by which an heir-at-law or devisee may be made to thus account before participating in distribution of personalty which goes into the hands of the personal representative. That may be accomplished through means of a set-off, pleaded by the executor or administrator. But under the statute of this State, as often construed by this court, an heir-at-law or devisee takes an estate in land charged only with debts and liabilities of the ancestor or testator. And in case of alienation, sec. 8, art. 1, chap. 44 Gen., Stats., makes this provision : "When

the heir or devisee shall alien, before suit brought, the estate descended or devised, he shall be liable for the value thereof, with legal interest from time of alienation to the creditors of the decedent or testator, but the estate shall not be liable to the creditor in the hands of a *bona fide* purchaser for valuable consideration."

If this was a contest between Thompson, a creditor of J. F. Myers, and purchaser of his interest in the land, and even a creditor of the testator, who had not acquired a prior lien, the title of the former would, in our opinion, prevail under that section, and he would be entitled to the share in the land thus purchased, without any abatement or diminution in favor of or for benefit of the latter. And, if so, we do not perceive upon what theory his title can be affected or interest diminished as heir of or in favor of the other devisees.

But the respective rights of a purchaser of an undivided interest of an heir-at-law or devisee, and of other heirs-at-law or devisees, in the matter of dividing land of the ancestor or testator, has been determined by this court in Scobee v. Bridges, 87 Ky., 427, where the precise question now before us was presented, except the ancestor died intestate.   There this language was used : "The estate of the intestate stood only as an ordinary creditor of the son, the latter becoming a debtor only to the personal representatives upon their payment of the debts due by the son and for which the father was liable as the surety.   The estate descended to the son free of any lien for the debts due to the father, and these creditors, having levied their executions and purchased this interest of Jas. W. Scobee, will hold it against any other creditor where no lien exists.   The statute gives no lien, and the most

vigilant in acquiring a lien by operation of law will be entitled as against those who fail to coerce payment."

There not only was the question involved in this case directly decided, but the reason for the rule governing in all such cases stated. Two of the notes which Jas. W. Scobee had executed to his father were, however, for advancements, not debts; and, as to the amount of them, it was held the purchaser must, according to sec. 15, chap. 31, account in division of the land just as Jas. W. Scobee would have been required to do. And thus was again, as had been often before, recognized by this court, the distinction to be observed between debts due by an heir-at-law or devisee to the ancestor, and advancements made by him, in determining the rights of a purchaser or creditor in relation to claims of other heirs-at-law or devisees.

That case is decisive of the question here involved, and must control, unless overruled, which we now see no reason for doing.

The case of Brown's Adm'r v. Mattingly, 91 Ky. 275, does not necessarily conflict with it. For the contest there was between the administrator and an attaching creditor of one of the heirs-at-law; and the sole question involved was whether the former could plead indebtedness of that heir-at-law to the estate as set-off to his distributive share of personalty which had been attached by the latter. But whether the administrator had a right to rely upon the set-off, except to the extent of extinguishing that distributee's interest in the personalty, was not decided. It is true it was there said that "if his distributive share in the personal estate is not equal to the amount thus received, the real estate ought to be held to

be charged with the payment of the remainder, in the division, and he to receive that much less." But the other heirs-at-law were not before the court, and, consequently, it was not necessary to then determine their rights relative to that of the attaching creditor.

In our opinion, as the statute exists, Thompson was entitled to an undivided fifth of the tract of one hundred and sixty-five acres of land, without any diminution of quantity by reason of J. F. Myers' indebtedness to the testator.

Wherefore the judgment is reversed and cause remanded for further proceedings consistent with this opinion.