---

(14 Misc. Rep. 169.)

### In re SMITH'S ESTATE.

(Surrogate's Court, Madison County. October, 1895.)

1. COLLATERAL INHERITANCE TAX—SETTING ASIDE—CONCEALMENT OF FACTS.
   The concealment of facts by an administrator is no ground for setting aside an appraisement of the estate under Laws 1885, c. 483 (Collateral Inheritance Tax Law), as that act did not require an administrator to voluntarily aid the appraiser, or to make any disclosure as to the estate.

2. SAME—FAILURE TO APPRAISE PROPERTY—REMEDY.
   Failure to appraise a judgment in favor of the estate against one who is entitled to a distributive share of the estate greater in amount than the judgment, and therefore collectible simply by deducting it from the distributive share of the judgment debtor, though erroneous, cannot be corrected by a proceeding to set the appraisal aside, but only by appeal.

3. EXECUTORS AND ADMINISTRATORS—RETAINER—DEBT BARRED BY LIMITATION.
   The right of an administrator to retain from the share of a distributee the amount of a debt due from the distributee to decedent is not affected by the fact that the right of action on the debt is barred by limitation.

Proceeding to set aside the appraisal of the estate of Sidney Smith, deceased, made under Laws 1885, c. 483.  Dismissed.

H. M. Aylesworth, S. D. White, H. B. Coman, and E. R. Olcott, for comptroller.

Man & Man and S. M. Lindsley, for estate.

KENNEDY, S.  This is a proceeding to set aside the appraisal and assessment of the collateral inheritance tax upon the estate of Sidney Smith, deceased, upon the ground of alleged fraud and fraudulent concealment of facts by the administrator at the time of the appraisal of the estate in 1888.

We must deny the application for the following reasons:

Excluding the Adams judgment, to which we hereafter refer, the state claims that some or all of the committees who have had charge of Sidney Smith's estate during his lunacy, from 1848, to his death, in 1886, have been guilty of great irregularities in the management of his property, and that, at the time of the appraisal, said committees were indebted to his estate in a large sum of money, which ought to have been taxed.  Without examining the evidence to ascertain whether this claim is true or not, we shall hold as follows:

At the time the assessment was made, the statute did not authorize the appraiser to subpœna and compel the attendance of witnesses for the purpose of ascertaining under oath the condition and amount of the estate.  He was without power to make any investigation, save by personal observation and inquiry.  In this case the appraiser did all that he was authorized or empowered to do under the law as it then was in determining the amount of property liable to taxation.  Having made use of and exhausted every

remedy then provided for the appraisal of this estate, the state is bound by his acts and conclusions, unless he committed errors for which an appeal might have been taken. The collateral inheritance tax act of 1885 imposed no duty or obligation upon the administrator of this estate to voluntarily aid the appraiser in any manner whatever in making the appraisal, or to make any statement, disclosure, or proof as to the condition or amount of the estate he represented, any more than a private citizen is under obligation to inform the tax assessor of the amount and condition of his property for the purpose of an assessment. We, therefore, hold that the administrator was not guilty of any fraudulent acts of commission or omission in connection with the appraisal of this estate.

Even if the appraiser had been informed that there were irregularities in the management of the lunatic's estate from 1848 to 1886, by reason of which the several trustees were indebted to said estate, he would have been justified, and we think it would have been his duty, to hold that the claims arising therefrom had no fair market value, because he had no power to investigate the matter, and, even if he had possessed the power, because of the long, expensive, and uncertain litigation that would have been necessary to ascertain the fact. In view of the statute as it was at the time of the appraisal, we think this estate, upon this branch of the case, has been legally submitted to the appraiser, and the assessment for this reason cannot be set aside, except for errors, for which an appeal is the only proper remedy.

2. It is claimed by the state that the balance due upon the Adams judgment, amounting to about $60,000, should have been appraised. We so hold, but the remedy for the error was by appeal in due time from the assessment, and not by proceedings to set the same aside. The administrator had a lien and right of detention upon the distributive share of Adams in said estate to the amount of his indebtedness to it, which could have been enforced upon the judicial settlement of the estate by simply deducting the same from the amount to which he was entitled, and it would have been the duty of the surrogate to make the decree accordingly. It is an undisputed fact that the Adams share of the estate was in excess of the amount due upon the judgment, and also that the administrator had sufficient funds in his hands to pay it. Under such circumstances, the opinions of Smith or Underhill as to the market value or collectibility of this claim are of no consequence; for, upon the facts above stated, the law had settled the question of its value by declaring that the administrator had a lien or right of detention upon sufficient assets then in his hands to pay the same in full, and provided a remedy for its collection. Even if the Adams claim had not been put into judgment, the statute of limitations would not have been a bar to the recovery of the debt in the manner above stated. Rogers v. Murdock, 45 Hun, 30. The appraiser may have been misled by the statements of Smith and Underhill because he was not aware of the law applicable to this branch of the case. His conclusion as to the value of this Adams

claim was erroneous, but the error was one that should have been corrected by appeal from the assessment.

3. This surrogate's court has heretofore held, by its order of March 16, 1889, that the proceeds of Alabama lands were exempt from taxation, and no reason appears why the ruling upon that question should be changed.

An order will therefore be entered dismissing these proceedings, with $250 costs, to be paid by the comptroller of the state of New York.

Ordered accordingly.