## Lexington Brewing Company v. Hamon, et al.

(Decided November 12, 1913).

### Appeal from Scott Circuit Court.

1. Assignment—Equitable Assignment—Particular Form of Words Not Necessary.—No particular form of words is necessary to make a valid equitable assignment of a chose in action; nor is any written instrument necessary.
2. Assignments—What Amounts to Equitable Assignment.—Any order, writing or act which makes an appropriation of the fund amounts to an equitable assignment thereof.
3. Equity—Priority.—In a contest between equities merely, that which is prior in time will prevail.
4. Estoppel—Representation Amounting to.—A representation which will operate as an estoppel must be one that is either a suggestion of an untruth, or a concealment of the truth when there is a duty to speak.

BRADLEY & BRADLEY for appellant.

B. M. LEE for appellees.

Opinion of the Court by Judge Miller—Affirming.

R. J. Hamon, of Scott County, died intestate on June 1, 1910, leaving a widow, Thirza J. Hamon, and three children, Andrew W., James W. and Jesse S. Hamon surviving him. His estate consisted of an inconsiderable amount of personal property, and a farm of 112 acres lying near Finnell, and worth about $3,000.00.

On September 23, 1910, the widow, Thirza J. Hamon, and her son, Andrew W. Hamon, brought this action against James W. Hamon and Jesse S. Hamon for a sale of the farm upon the ground of its indivisibility; for the allotment of dower to the widow out of the proceeds; and the division of the remainder of the proceeds among the three children.

Thirza J. Hamon qualified as administratrix of her husband, but brought the action in her own name as widow. As administratrix, she was not a party in the original petition.

On October 22, 1910, a judgment was entered, granting the prayer of the petition; adjudging the land to be indivisible without materially impairing its value, and directing its sale for the purposes named in the petition. The judgment contained this clause: "It is adjudged by the court that said widow is entitled to dower in said land, and that the plaintiffs, James W. Hamon and Andrew Hamon, and the defendant, Jesse S. Hamon, are entitled to one-third each of the proceeds of said land, subject to the dower interest of the plaintiff, Thirza J. Hamon."

On November 21, 1910, the land was sold for $2,800.00, upon a credit of six and twelve months for equal portions of the purchase money.

On March 7, 1911, James W. Hamon borrowed $400.00 from the Lexington Brewing Company, executing his note therefor, which contained a memorandum endorsed below his signature to the effect that the note was secured by the assignment of Hamon's interest in the estate of R. J. Hamon, and also by a city liquor license. At the same time James W. Hamon signed and delivered to the Brewing Company the following paper:

"Thirza J. Hamon, James W. Hamon and Andrew Hamon,

v.

"Jesse Hamon.

"In consideration of $400.00 this day paid to me by the Lexington Brewing Company, I hereby sell, transfer and assign to the said Lexington Brewing Company all of my interest in the purchase money of land heretofore sold in the above action by the Master Commissioner of this court, and for which the purchaser has executed bonds which will hereinafter become due as shown by the records of this court; and I hereby request the court to enter an order directing any money or funds that may be due out of the proceeds of sale in this action to be paid to the said Lexington Brewing Company; and hereby authorize the Master Commissioner of this court to pay over to the said Brewing Company all or any funds that may be now or hereafter due to me out of said proceeds of sale.

"Witness my hand this 7th day of March, 1911.

"JAMES W. HAMON."

On May 4, 1911, the Brewing Company tendered its petition to be made a party to this action, setting up the assignment to it from James W. Hamon, and asking that Hamon's interest in the purchase money be paid to the Brewing Company.

On October 20, 1911, Thirza J. Hamon, as administratrix of R. J. Hamon, filed her answer to the petition of the Brewing Company, in which she alleged that whatever interest in said estate, or in its proceeds that James W. Hamon had, was held by her as security for the payment of a note for $180.64, which James W. Hamon had executed to the Leesburg Bank, with R. J. Hamon as his surety, and also to secure the re-payment of $250.00 which she, as administratrix, had advanced to James W. Hamon on January 10, 1911, on his interest in said estate. She alleged, and proved, that she had paid the note due the bank for $180.64 upon which her intestate was surety, and that James W. Hamon had directed her to pay the same out of his interest in the estate and to charge it to the said James W. Hamon in the settlement thereof, long before the assignment of his interest to the Brewing Company.

Issues were made as to this assignment; and in avoidance the Brewing Company set up a plea of estoppel against the administratrix. In this plea the Brewing Company stated that when James W. Hamon applied to it to borrow the $400.00, it sent its representative to the Master Commissioner of the court to ascertain what interest James W. Hamon had in the estate of his father, and that the Commissioner informed the company's representative that no debts had been proven against the estate; and that after paying the costs of the suit there would be about $600.00 due James W. Hamon. The company does not claim that it had any conversation or dealings with the administratrix in this connection, but rests its estoppel upon the fact that she had procured the judgment hereinbefore referred to and set out, in part, which declared that the land belonged to the three children equally, subject only to the dower interest of the widow, and that the three children would be entitled to one-third each of the proceeds of the land, subject to the dower interst.

The proof upon the question of the assignment from James W. Hamon to Thirza J. Hamon as administratrix is found in the following extract taken from her deposition, to-wit:

"Q. What was the agreement between you and James W. Hamon, if there was any agreement, about how and when this money should be paid to you which you advanced to him in January 1911?

"A. When he got the part from his father's estate. It was coming through my hands, and he told me just to keep it out.

"Q. If you had any conversation with him at that time, or prior to that time, with reference to the payment of the Leesburg Bank debt for which his father was surety, state the agreement? A. It was about the same agreement. He said when he got his part of the estate that was to be paid.

"Q. Why didn't you take steps to collect the money by suit or otherwise, A. Well, I thought it was safe you know, I just thought the money was coming through my hands, and didn't think there would be any difficulty about it at all. * * *

"Q. At the time you made the loan or advancement to him of $250.00, I will ask you to state whether you took his interest in the estate for security, or whether it was agreed between you and him that you were to hold that out of what was coming to him out of his father's estate and for that reason thought it was safe? A. That was the arrangement."

She further testified that she had no conversation with the Brewing Company, or with any one else, about what was or would be due James, and that James himself did not know what was coming to him, because he did not know the indebtedness of the estate.

Under this proof the court adjudged the claim of the testatrix superior to the claim of the Brewing Company against the interest of James W. Hamon, and from that judgment the Brewing Company prosecutes this appeal.

It will be noticed that both claims to a lien originated after the sale of the land, unless the claim of the administratrix for the $180.64, which she paid as surety, operated as an advancement to James, and in favor of the estate, upon the death of his father. But if we should treat the claim of the administratrix to a lien for the $180.64 as originating under her agreement with him at the time she advanced him the $250.00 on January 10, 1911, the claim of the administratrix will still ante-date the claim of the Brewing Company, which originated on March 7, 1911.

Appellant relies upon Scobee v. Bridges, 87 Ky., 427; Thompson v. Myers, 95 Ky., 597; Marshall v. Strange, 10 Ky. L. R., 410, 9 S. W., 250; and Peoples Bank of Kentucky v. Barbour, 14 Ky. L. R., 98, in support of its contention that the testatrix of R. J. Hamon's estate had no lien upon the real estate which descended to the heir to secure a debt due the estate from that heir, and that the estate is in the same position as any other creditor.

Conceding, for the argument, that those cases decided all that is claimed for them by appellant, they go no further than to declare that the estate has no lien in the absence of an assignment by the heir to the administratrix.

Appellant's position is, therefore, necessarily based upon the further contention that there was no assignment by James W. Hamon to the administratrix for the benefit of the estate. And, to meet this contention that there was no such assignment, appellant claims that the agreement between James W. Hamon and the administratrix was nothing more than a promise to pay from a certain fund, which did not amount to an assignment or create a lien of any kind. This, and the plea of estoppel, constitute the appellant's case.

1. This is a contest between equities, in which the appellant's equitable assignment is evidenced by a writing, while that of the administratrix is in parol. This difference, however, is of no importance. The appellant's contention that the proof fails to sustain the claim of the administratrix to an equitable assignment cannot be maintained. The requisites to an equitable assignment are thus stated by Bispham in his work on Equity:

"No particular form of words is necessary in order to make a valid assignment of a *chose* in action. Nor is any written instrument required, for it is sufficient if there is a verbal declaration whereby the intention to part with the ownership of the chose is properly manifested." Section 167.

The Kentucky decisions are in full accord with this rule of the text writers.

In the leading case of Newby v. Hill, 2 Met., 530, Hill took an attachment against Lear, which was levied on a debt which Jackson owed Lear, for land. Newby intervened, showing that he was surety for Lear in a note, and at the time of the execution of the note, which ante-

dated Hill's attachment, Lear had agreed that Newby should have the debt on Jackson as an indemnity for the suretyship. In sustaining Newby's claim as a valid prior equitable assignment, this court said, that any order, writing or act, which makes an appropriation of the fund, amounts to an equitable assignment thereof, and that an assignment of a debt might be made by parol as well as by writing.

In the course of the opinion, the court said:

"The holder of an unrecorded assignment of a debt in trust, or in mortgage, acquires an equity as valid as if such assignment had been recorded, and it will prevail over any subsequent equity to the same fund, although acquired without notice of the previous assignment. It is clear therefore that the appellees were not injured by the failure of the appellants to reduce to writing the assignment or agreement (by whatever name it may be designated), under which they assert their prior equitable right to the debt in contest.

"In a contest between equities merely, that which is prior in time must prevail. And such is the contest here. The appellees, as attaching creditors, acquired only a lien upon, or equitable right to, the debt in the hands of the garnishee. But this equity is subordinate to that acquired by an assignee of the debt, whose equitable right was created before the commencement of the action. (17 B. Mon., 630, and other subsequent cases to the same effect).

"The equitable right acquired by the appellants to the debt due by Jackson to Lear, having been created before the commencement of this action, must prevail over the equity created by the attachment in favor of the appellees."

The doctrine there announced has been repeatedly approved and followed in the subsequent opinions of this court.

See Corn v. Sims, 3 Met., 399; Gray v. Briscoe, 6 Bush, 690; Elliott v. Harris, 9 Bush, 239; Brooks v. Staton's Admr., 79 Ky., 179; Beard v. Sharp, 23 Ky. L. R., 1584, 56 S. W., 810; Crews v. Yowell, 25 Ky. L. R., 599, 76 S. W., 145; Lutter v. Grosse, 26 Ky. L. R., 585, 82 S. W., 278; Brown v. Lapp, 28 Ky. L. R., 410, 89 S. W., 304; Thompson v. Stiltz, 29 Ky. L. R., 1075, 96 S. W., 884.

The proof brings the case of the administratrix within the rule above announced; and as her assignment was prior to James W. Hamon's assignment to the Brewing Company, the circuit court properly gave precedence to her claim.

2. Neither is there any virtue in appellant's plea of estoppel, which is rested entirely upon the recitation in the judgment above quoted, to the effect that each of the sons of R. J. Hamon owned a one-third interest in the land and its proceeds after the assignment of dower. Mrs. Hamon made no representation whatever to the Brewing Company; she had no transaction of any kind with it. Moreover, a representation which will operate as an estoppel must be one that is either a suggestion of an untruth, or a concealment of the truth when there is a duty to speak. Bispham's Equity, Section 282.

The judgment relied upon was the act of the court, and truthfully declared what everybody knew before the suit was brought, or the judgment was entered. If no suit had been brought, and appellant had loaned the $400.00 to James W. Hamon, as it did, it would have been in precisely the same position as it now finds itself after the suit had been brought and the judgment had been entered. In either case appellant would have taken the assignment from James W. Hamon subject to any earlier assignments he might have made to other persons. The judgment neither helped nor hurt appellant's case.

It follows that the judgment of the circuit court was right, and it is affirmed.