JOHN A. SENNEFF, Appellant, v. A. A. BRACKEY, ET AL.,
Appellees, and F. A. KINGLAND, Special Admir. of the
Estate of ALF. T. BRACKEY, Deceased, Appellee, v.
ALBERT BRACKEY, ET AL., Appellants.

**Mortgages:** GOOD FAITH PURCHASER. A mortgage given to secure a pre-
1 existing debt does not ordinarily constitute the mortgagee a good
faith purchasee for value in preference to those holding equitable
liens upon the property.

**Estates of decedents:** CLAIMS AGAINST LEGATEE: SET OFF. A devise of
2 real estate is subject to the indebtedness of an insolvent devisee
due the estate at the death of the testator, and will not pass to his
assignee, grantee or mortgagee, discharged of all claims for such
indebtedness. Thus where an insolvent son, to whom his father
devised real estate, had in his possession at the time of his father's
death funds belonging to the estate, for which he refused to
account, a judgment in favor of the administrator for such indebt-
edness was a superior lien against his interest in the property to that
of a mortgage given to secure a pre-existing debt, and could be set
off against his interest in the land irrespective of the mortgage.

**Same:** MORTGAGES: BONA FIDE PURCHASER. A mortgage given by a
3 devisee of land to his attorney to secure his fees for litigation involv-
ing the validity of the will, and also a claim against the devisee for
funds of the estate in his hands, does not authorize the mortgagee
to hold the property as a bona fide purchaser, where he knew at the
time he took the mortgage, that if the claim was established the
devisee would be insolvent; but the administrator was entitled to
set-off the claim for such funds against his interest in the land.

*Appeal from Winnebago District Court.*—HON. C. H. KELLY,
Judge.

TUESDAY, MARCH 24, 1914.

ACTION to foreclose a mortgage given by Albert A.
Brackey upon lands devised to him by one Alf. T. Brackey.

A special administrator of the estate of Alf. T. Brackey claimed that a judgment held by him against Albert A. Brackey for money converted by him, although rendered after the execution of the mortgage to plaintiff, was a prior lien. The trial court found that the judgment was entitled to priority, and plaintiff appeals. *Affirmed.*

*Senneff, Bliss & Witwer,* for appellant.

*Oliver Gorden, Morgan & Meighen,* and *T. A. Kingland,* for appellees.

DEEMER, J.—Alf. Tallackson Brackey, by his last will and testament, devised to his son, Albert A. Brackey, a life estate in a certain quarter section of land with remainder over equally to all the children of Albert A. The remainder of his estate, both real and personal, was devised equally to all his children. At the time of decedent's death, Albert A. had in his possession $3,260 which belonged to his father, or his estate. Albert was then and has ever since been insolvent. Decedent died April 12, 1909, and Albert A. offered the will for probate. All the other heirs joined in contesting the will, and a trial was had which finally reached this court, resulting in an order confirming the will and probating the same. T. A. Kingland was appointed special administrator of testator's estate, in October, 1909. He brought suit against Albert A. Brackey for the amount of money held by him belonging to his father's estate, and as a result thereof, in the same month, recovered judgment for the amount claimed. In June and November of the year 1911, Albert A. Brackey executed mortgages to various parties, which covered all his interest in the quarter section of land specifically devised. These mortgages were executed to Senneff, Senneff & Bliss, the Farmers' State Bank of Lake Mills, the First National Bank of Lake Mills, and the Lake Mills Implement Company, respectively. Each of said

mortgagees knew at the time that, the mortgagor was insolvent, and on June 29, 1912, he filed a voluntary petition in bankruptcy and has been discharged, as we understand it. The controversy is with reference to the priorities of these several mortgages and judgment liens. The trial court found that the judgment in favor of the special administrator was prior and superior to the mortgage liens, and superior to the claims of the trustee in bankruptcy, and the mortgagees and trustee in bankruptcy appeal.

A few more facts should be stated in order that the exact legal propositions may be fully understood. The mortgages covered not only the life estate devised to Albert A. Brackey, but also his one-seventh interest in another eighty-acre tract of land which was afterward sold at referee's sale, in a partition suit, by T. A. Kingland, referee, and one-seventh of the proceeds from the sale was paid to plaintiff Senneff to be applied on one of the mortgages held by him. The interest of Albert A. Brackey in the personal estate of his father will not exceed $500. The original notice of the suit brought by the special administrator against Albert A. Brackey was served on March 16, 1910, and the petition was filed March 18, 1911. In June of the year 1911, Brackey made one of the mortgages, heretofore referred to, to John A. Senneff to secure the sum of $1,500, and on November 4, 1911, the mortgages were made to one of the banks, and the implement company before referred to, and on the same date he executed a mortgage to Senneff & Bliss to secure the sum of $1,200. On November 11, 1911, a verdict was returned for the special administrator in the suit brought by him for the sum of $3,260.

On June 29, 1912, Brackey filed a petition in bankruptcy, and on October 5th of the same year judgment was rendered on the verdict. At the time the will was made, Albert did not owe his father any money, but at the time of the testator's death he (Albert) held $3,260 in his hands, belonging to the estate, which he refused to turn over. The

mortgages referred to were, generally speaking, made to secure pre-existing debts; but the $1,200 mortgage was made to secure Senneff & Bliss, who are attorneys, in their fees, not only in the will contest case, but in defending against the suit brought by the special administrator. They appeared for Brackey in the suit brought by the special administrator and knew of the claim made against him in that suit.

At the time of the making of the $1,200 mortgage, Senneff knew that if judgment was obtained by the special administrator Brackey would be insolvent, but he testified that at the time of the taking of the $1,500 mortgage he was not aware of the mortgagor's insolvency, although he was advised of the claim made by the special administrator. The $1,200 mortgage was given while the suit of the special administrator was being tried; Senneff & Bliss, the mortgagees, being attorneys for the mortgagor. Albert A. Brackey was in fact insolvent at the time of testator's death and remained so until he went into bankruptcy. Neither Senneff nor Senneff & Bliss knew of this fact, however, at the time the first mortgage to Senneff was made, but they were advised before the taking of the Senneff & Bliss mortgage that, if the special administrator recovered in his suit against Brackey, Brackey would be unable to pay the amount to the estate.

After recovering the judgment, the special administrator brought the second action referred to in the title to this opinion, in which he asked that his judgment be declared to be a specific lien upon the real estate devised to him by the testator, prior and superior to the liens created by the several mortgages, and that Senneff be required to refund the amount received by him from the referee in the partition suit, representing Albert A. Brackey's interest in the lands sold in that suit.

The $1,500 mortgage was made to secure the money with which to pay Senneff & Bliss for their attorney's fees in the will contest, and possibly some other matter.

The suits by the special administrator to secure the judgment and to establish the lien thereof against Brackey's interest were not unduly delayed, because the contest of the will was pending, and until that was finally decided no one knew whether Albert A. Brackey would take under the will or as an heir of his father.   When the $1,200 mortgage was taken, the mortgagees felt and believed that the suit they were then trying was likely to go against their client, and it was made to secure their attorney's fees in that case, and also some other services theretofore rendered.   Upon these facts, and the issues joined, the trial court made the following findings and order in the case brought by Kingland, special administrator:

It is conceded by the parties that, at the time of the death of Alf. T. Brackey, deceased, Albert A. Brackey was indebted to various and sundry parties in an amount sufficient so that together with the amount of the above judgment he was insolvent.   The evidence shows that, if the claims of the defendants are allowed priority over said judgment, the effect will be a loss to said estate of a substantial part, or perhaps all, of said judgment.   I am of the opinion that the 'diligent creditor' rule does not apply, and that the defendant Albert A. Brackey ought not to be permitted, either by direct or indirect means, to avail himself either personally, or by assignment to others, of property which comes from the estate of Alf. T. Brackey, deceased, and at the same time be permitted to defeat the recovery by said estate of a valid claim against him.   It seems to me that to permit him to do so would be unjust to the estate.   I have no hesitancy in concluding that so far as Albert A. Brackey would derive any benefit from the personal estate of Alf. T. Brackey, deceased, the estate would properly offset in its favor any claim against Albert A. Brackey, and in principle I can see no reason why the same rule should not apply to the realty.   The evidence shows that a certain tract of real estate which belonged to Alf. T. Brackey at the time of his death was sold by regular partition proceedings in court, and the portion of the proceeds thereof which would have belonged to Albert A. Brackey, but for the claim of said estate against him, was paid to the defendant

John A. Senneff. This plaintiff, special administrator, personally acted as referee in making such partition sale and distributing the proceeds derived therefrom, and I am of the opinion that in legal effect the payment made by him to said Senneff was voluntary and that the amount thereof cannot now be recovered back.

It follows that in my opinion the claim of plaintiff should be and the same is hereby, together with the costs of this proceedings, decreed to be prior and superior to the claims of said defendants and each of them by reason of any and all mortgages made by Albert A. Brackey upon the real estate in question, or any interest therein; that plaintiff has a prior lien upon any and all moneys or personal property of every kind and nature coming, directly or indirectly, to Albert A. Brackey or his assigns from the estate of Alf. T. Brackey, deceased, except that the amount heretofore paid to John A. Senneff by reason of said partition proceedings is hereby decreed to be the property of said Senneff. The claim of plaintiff is also hereby decreed to be prior and superior to the right of the defendant trustee in bankruptcy. The costs of this action are hereby taxed to defendant Albert A. Brackey, and judgment is entered accordingly.

And in the action brought by Senneff to foreclose his mortgages the court entered the following decree:

By this proceeding plaintiff asks the foreclosure of certain mortgages executed by Albert A. Brackey. T. A. Kingland, special administrator, asks that a certain judgment rendered in his favor be decreed to be superior to plaintiff's claims. The decree entered on this date in case No. 4772, *T. A. Kingland, Special Administrator, v. Albert A. Brackey et al.*, determines the respective rights of the parties, and plaintiff's said mortgages are hereby decreed to be junior and inferior to said judgment and, subject to the rights of said Kingland as special administrator of the estate of Alf. T. Brackey, deceased, as determined in the decree entered in said case No. 4772, judgment and decree of foreclosure as prayed is entered for plaintiff. Clerk assess. Judgment against Albert A. Brackey for costs, including a reasonable attorney's fee to be taxed by the clerk.

Plaintiff Senneff in the first case, and all the defendants in the second case, appeal; but the main contention is between the special administrator on his judgment, and Senneff and Senneff & Bliss on their mortgages to secure the sums of $1,500 and $1,200, respectively.

Although not controlling, it may be well at the outset to say that none of the mortgagees were, in our opinion, under the facts disclosed, good-faith purchasers from Brackey. These mortgages were each and all to secure pre-existing debts, unless perhaps it may be the first $1,500 mortgage to Senneff; and, while supported by valuable considerations, there is no showing which would justify a holding that the mortgagees were what are ordinarily termed good-faith purchasers.

1. MORTGAGES: good faith purchaser.

The only question, as we view it, is simply this: Is a devise of real estate, either general or specific, to one who at the time of testator's demise is largely indebted to the estate, and is insolvent, subject to the devisee's indebtedness to the estate, or does it pass to him free from this indebtedness, and may he or his assignee, grantee, or mortgagee take the estate devised free from all claim by reason of his indebtedness to the estate.

2. ESTATES OF DECEDENTS: claims against legatee: set-off.

The general rule as to personal property is that, as against a bequest to one who is already indebted to the estate, the amount of this indebtedness may be set off or detained against the legacy. And this may be done, as we understand it, whether the legatee be solvent or insolvent. *Finch v. Garrett*, 102 Iowa, 381; *West v. Beck*, 95 Iowa, 520; *Bowen v. Evans*, 70 Iowa, 368; *Pinckney v. Pinckney*, 114 Iowa, 441; *Garrett v. Pierson*, 29 Iowa, 304. On the other hand, it is the general rule that as against devises of real estate, either general or specific, there is no right to offset a mere debt of the devisee, although such amounts if advancements, and doubtless if mere debts, should be brought into hotchpot

and charged against the devisee or devisees receiving them. *Russell v. Smith*, 115 Iowa, 261; *Rider v. Clark*, 54 Iowa, 292; *McCormick v. Hanks*, 105 Iowa, 639.

In the *Russell* case, *supra*, it was said, however: "There may be cases where, on account of the insolvency of the debtor, or some other cause, equity will interfere for the protection of the estate." This was perhaps dictum, and yet it was announced for the purpose of saving an exception to the general rule, if any such exception exists. As a matter of fact, many courts, and doubtless a majority, numerically, recognize and enforce the exception. *Streety v. McCurdy*, 104 Ala, 493 (16 South, 686); *Oxsheer v. Nave*, 90 Tex. 568 (40 S. W. 7, 37 L. R. A. 98); *In re Dickinson Estate*, 148 Pa. 142 (23 Atl. 1053; *Towles v. Towles*, 1 Head (Tenn.) 601; *Fiscus v. Fiscus*, 127 Ind. 283 (26 N. E. 831); *Fiscus v. Moore*, 121 Ind. 547 (23 N. E. 362, 7 L. R. A. 235); *Nelson v. Murfee*, 69 Ala. 598; *Head v. Spier*, 66 Kan. 386 (71 Pac. 833); *Cowen v. Adams*, 78 Fed. 536 (24 C. C. A. 198); *Hopkins v. Thompson*, 73 Mo. App. 401; *Gosnell v. Flack*, 76 Md. 423 (25 Atl. 411, 18 L. R. A. 158); *Webb v. Fuller*, 85 Me. 443 (27 Atl. 346, 22 L. R. A. 177); *New v. New*, 127 Ind. 576 (27 N. E. 154); *Smith v. Smith*, 13 N. J. Eq. 164; *Brown v. Mattingly*, 91 Ky. 275 (15 S. W. 353); *Ex parte Wilson*, 84 S. C. 444 (66 S. E. 675); *In re Esmond's Estate*, 154 Ill. App. 357; *Koons v. Mollett*, 121 Ind. 185 (23 N. E. 95, 7 L. R. A. 231; *Keever v. Hunter*, 62 Ohio St. 616 (57 N. E. 454); 2 Woerner's Am. Law of Administration (2d Ed.) pages 1071-1168, 1237, and section 564, where there is a full discussion of the subject. See, also, case note to *Marvin v. Bowlby*, 4 L. R. A. (N. S.) 189. Cases from other states have not recognized any exception to the general rule, although in some of these the question of the insolvency of the devisee did not appear. *Vide, Marvin v. Bowlby, supra; La Foy v. La Foy*, 43 N. J. Eq. 206 (10 Atl. 266, 3 Am. St. Rep. 302). No attention was paid, however, to *Smith v. Smith, supra*, from the same state, and it did not appear

that the devisee was insolvent. *Manning v. Brown* (N. J.) 20 Atl. 381; *Hancock v. Hubbard,* 19 Pick. (Mass.) 167; *Dearborn v. Preston,* 7 Allen (Mass.) 192; *Jones v. Treadwell,* 169 Mass. 430 (48 N. E. 339); *Thompson v. Myers,* 95 Ky. 597 (26 S. W. 1014). But see, in same connection: *Brown v. Mattingly,* 91 Ky. 275 (15 S. W. 353); *Scobee v. Bridges,* 87 Ky. 427 (9 S. W. 299); *Broas v. Broas,* 153 Mich. 310 (116 N. W. 1077); *Mann v. Mann,* 12 Heisk (Tenn.) 245; *Towles v. Towles,* 1 Head (Tenn.) 601; *Sartor v. Beaty,* 25 S. C. 293; *Proctor v. Newhall,* 17 Mass. 81; *Kendall v. Mondell,* 67 Md. 444 (10 Atl. 240); *Smith v. Kearney,* 2 Barb. Ch. (N. Y.) 533; *Matter of Smith,* 14 Misc. Rep. 169 (35 N. Y. Supp. 701), *Mann v. Mann, supra,* although apparently in point, recognizes the right of offset in some cases.

The opinion in *Brown v. Mattingly, supra,* is really not in point because the right of detention was recognized. The writer of the note in 4 L. R. A. (N. S.) 190, states the two doctrines as follows:

The authorities are not in harmony on the question of an heir's indebtedness to the estate as forming a counterclaim or set-off against the debtor heir's distributive share arising from the sale of real property. Some of the leading cases on this subject are cited and discussed by the court in its opinion and need not be commented on in this note. The authorities which do not accept the doctrine of retainer or set-off are based on the theory that the real estate of the intestate descends directly to the heirs upon the death of the ancestor, and vests in them, subject only to the debts of the estate; and, if the real property comes to them by will, the general rule applied is that, if the testator intends to do so, he may charge the estate devised with the duty of paying any debt which may be due from the devisee to the testator, and his omission to impose such a condition evinces an intention to make the devise unconditional  The cases in which the opposite doctrine finds support are based on statutory provision, or proceed on the theory that an heir who is a debtor to the estate stands in the attitude of having received so much from the estate, and, if his distributive share in the personal prop-

erty is not equal to the amount thus received, the real estate ought to be held charged to the payment of the remainder in the division, and he receive that much less..

The rationale of the latter rule will better appear from this quotation from *Marvin v. Bowlby,* 142 Mich. 251 (105 N. W. 753, 4 L. R. A. (N. S.) pages 194 and 195, 113 Am. St. Rep. 574, 7 Ann. Cas. 559) :

The Texas court said: 'Under our statutes, the real and personal estate of an intestate descend alike to the heirs, charged with the payment of debts, and subject to administration for that purpose. Both the real and personal property, when administered, are subject to distribution among the heirs in one proceeding. The debt of one of the heirs to the estate is a part of the general mass of property subject to distribution, and, if such heir fail to pay it, if more than his share, so much of it as amounts to the value of his share should be set apart to him; if less than his share, it should be taken by him in satisfaction of that share so far as it will go. The principle was applied *In Re Akerman* (1891) 3 Ch. 212.' In this case the court, in answer to the argument that the rule would not apply to real estate of a debtor heir which had not been converted into money, said: 'We apprehend that this makes no difference in principle, for the reason that the equity of requiring the debtor distributee is the same whether the mass to be distributed consists of property or money; and it is within the power of courts of equity to enforce the equity as well in the one case as in the other. Under our statutes in relation to the estates of deceased persons, a conversion of the property, both real and personal, may become necessary upon either of two contingencies: (1) For the payment of debts; and (2) in order to bring about equality in the final distribution. In principle we perceive no sound distinction between the two cases.' *Donaldson Estate,* 158 Pa. 292 (27 Atl. 959), was an appeal from a decree dismissing exceptions to an auditor's report in partition of an estate. The court held that the equity of payment of an heir's debt to an estate runs with the land, and the amount of the heir's indebtedness may be charged upon his share as against an execution creditor with notice that the same would be charged against said share as for an advancement. In *Gosnell v. Flack,* 76 Md. 423 (25 Atl. 411, 18 L. R. A. 158),

where a trustee of an insolvent heir claims the distributive share by right of his deed of trust, it was held that 'the right to a distributive share is subordinate from the beginning to the distributee's indebtedness to the estate. If he is charged with the indebtedness, as he should be, he can only receive in the way of a distributive share what remains after deducting that indebtedness. In other words, his right to claim any portion of the estate is limited to that portion, if any, which is in excess of what he owes to the estate,' and that the trustee was entitled to no greater rights than his grantor. In this case the proceeds of this estate were in the administrator's hands for distribution.

Aside from our own cases, already cited there is none other save *McCormick v. Hanks et al.,* 105 Iowa, 639. But the decision there was apparently made to turn first upon an abandonment of any claim against the devisee, and, second, upon the failure of the executor to assert it before the liens· of other creditors attached.

In view of the provisions of the will of Brackey whereby he devised but a life estate in certain lands to Albert A. Brackey, with remainder over to his (Albert A.'s) children, and the remainder of his entire estate, both real and personal, to all his lawful children, including Albert A. Brackey, share and share alike; of the fact that Albert A. was not indebted to his father at the time the will was made and was not indebted at the time of his death save that he had been intrusted with the sum of $3,260 which he (the son) refused to turn over after the death of his father; of the further fact that he (Albert A.) has been insolvent since the father's death and was both unwilling and unable to turn over the property held by him, belonging to the estate—we think it would be most inequitable to allow him to take his full share of the real estate devised to him, and of the real estate and personal property passing by the will to his brothers and sisters, share and share alike, without any diminution because of the fact that he already holds nearly $3,400 belonging to the estate, and either he or his assignee has already received for his

interest in the other real estate belonging to the deceased at the time of his death the sum of $631.34. Albert A. Brackey's share in the personal estate of the deceased, not taking into account the $3,260 owed by him to it, will not amount to exceed $500; and the estate has not been closed, and no part of the property has been distributed. Deceased left seven children surviving, each of whom, including Albert A., was entitled to an undivided one-seventh interest in his estate, both real and personal, save the quarter section of land devised to Albert A. Brackey and his children. To allow Albert A. Brackey to have his full one-seventh, and also the specific devise of the life estate, and yet not compel him to account for the money and property in his hands at the time of testator's death, belonging to his estate, would be in effect to give him practically the entire estate of the deceased, leaving the other devisees and legatees without anything. Such a result should not be reached if there be any way in law or equity for avoiding it.

In this regard we think the case is ruled by the authorities already cited, from some of which we have quoted. In addition thereto, the following extract from *Streety v. Mc-Curdy,* 104 Ala. 493 (16 South. 686) is quite in point:

And where an heir or distributee was indebted to the ancestor in his lifetime and continues indebted to his estate, this debt to, this chose in action held by, the estate, is assets in the hands of the administrator both for the payment of the debt of the decedent and for the purpose of distribution; and both personalty and realty, including in the case supposed—the debt of a distributee to the estate, being a common fund for equal distribution, either by allotment of a sale and division of proceeds among all the distributees, those not indebted to the estate are entitled to have the sum due from one who is so indebted collected from him, or, failing this, they have a right to share in the assets as if such collection had been made; and the debtor distributee shares in the estate only upon the like assumption of payment by him. So that if his debt is equal to or greater than the value of one

share in the distributable estate, including the claim against him, and that claim is not paid by him, he is never entitled to anything from the estate. Of course, a purchaser of his interest, or one holding a judgment, the lien of which would attach to any interest he would have had in the property of the estate but for his indebtedness to it, is in no better plight than he; such purchaser or lienor would acquire nothing because his vendor or judgment debtor had and was entitled to nothing.

In *Brown v. Mattingly, supra,* the Kentucky court said:

It is clear that the distributee's interest in the real estate should be extinguished to the extent of the amount he has received from the ancestor, so far as it exceeds his interest in the personal estate. He stands in the attitude of having received so much from the estate, and, if his distributive share in the personal estate is not equal to the amount thus received, the real estate ought to be held to be charged with the payment of the remainder in the division, and he to receive that much less. This is the only equitable rule. Were it otherwise, the one heir might virtually get a double or a treble portion.

The Indiana court said, in *Fiscus v. Moore, supra:*

If it were possible for an heir, immediately upon the death of his ancestor, to convey or incumber his interest in the real estate, so that, after paying the debts of the ancestor, his grantee or mortgagee might participate in the surplus equally with other heirs who had received or who owed the ancestor nothing, the most manifest injustice and inequality would result. The law always presumes that an ancestor meant that his heirs should share equally in his estate.

And in addition to the cases already cited, see *Boden v. Mier,* 71 Neb. 191 (98 N. W. 701; *Donaldson's Estate,* 158 Pa. 292 (27 Atl. 959) ; *Wallace v. Keyser,* 51 Pa. 498.

Of the cases holding to a contrary doctrine, some of them proceed upon the theory that, if the testator had intended that a debt due him by one of the devisees should

be deducted from a general or specific devise, he would have said so, and, as he did not do this, the indebtedness should not be deducted from the devisee's share, whether that devisee be solvent or insolvent. This rule, while good as a general proposition, is not applicable here because there was no indebtedness from Albert A. Brackey when the will was made, and in fact no real indebtedness at the time of testator's death. Brackey was simply holding testator's property which he refused to turn over. This was clearly a fund belonging to the estate which he was holding in trust, both for the testator and after his death for the representative of his estate. This clearly distinguishes the present from some of the cases relied upon by appellant.

Other cases holding to the contrary proceed upon the old ecclesiastical and common-law rule that the real estate of one deceased passes either by will or descends to his devisees or heirs free from any debts of the deceased. In other words, the real estate passes directly upon the death of the owner, either to his devisees, or heirs, and cannot, under any circumstances, be charged with his debts, nor has his executor or administrator any power or authority over the real estate for any purpose whatever. The Massachusetts and Michigan courts seem to base their conclusions largely upon this rule, although in Michigan the common-law rule was changed by statute, and is now similar to our own, with reference to the payment of debts due the deceased. So far as we have noticed, the majority of the courts holding with the Massachusetts doctrine permit an administrator to offset against the distributive share of an heir in personal property the amount of his indebtedness, particularly when the heir is insolvent. Or what is the same thing, in effect, they bring the debt into hotchpot and require the one distributee to account to all the others for their proportion of the amount he is owing the estate.

Our statute treats real estate and personal property as the same for many purposes. After exhausting the personal

property, real estate may be sold for the payment of debts. If needed for the purpose of paying debts, the executor or administrator may be authorized to take charge of it at once, and to apply the rents and profits to the payment of the debts, as well as the land itself. Until the estate is closed, one is never safe in purchasing real estate from the heirs or devisees, because of its liability to pay decedent's debts, and if one of the heirs or devisees withholds from the estate personal property which might be used for the payment of debts, or perhaps specific legacies, and has become insolvent, it is quite clear to us that he would be held in equity to an accounting before taking a specific devise of land to himself or transferring the same to another; and if transferred to such other as an innocent purchaser, before the administration was closed, we are clear that the purchaser would obtain no greater rights to the property than he would have had, had he remained the owner down to the time the estate was closed. So here, in view of the peculiar facts of this case, already set forth, the estate not being closed, we think it is clearly within the power of a court of equity to take from a specific devise, made to a distributee, a proper part of the funds of the estate in his hands at the time of testator's demise, and to decree the same to be a lien upon this specific devise. These cases are both in equity, and proper parties are before the court.

None of the mortgagees, unless it be Senneff individually, is an innocent holder for value, for they took their mortgages for pre-existing debts of the mortgagor. *Koon v. Tramel,* 71 Iowa, 132; *Chadwick v. Devore,* 69 Iowa, 637; *Phelps v. Fockler,* 61 Iowa, 340.

As to the first Senneff mortgage, he (Senneff) who was a member of the firm of Senneff & Bliss, attorneys at law, took the mortgage to secure the fees of the said firm and accounted to the firm for its fees, taking the mortgage to himself. At that time he was fully advised of the claim made by the special administrator that his mortgagor was holding $3,260 of

3. SAME: mortgages: bona fide purchaser.

money belonging to the estate. He did not then know of the mortgagor's insolvency, but he did know that, if this claim was established, Albert A. Brackey could not pay it in full. He was Brackey's attorney at that time, not only in the will contest, but also in the suit brought against him by the special administrator. Mr. Senneff testified as follows:

Our position simmers down to this, that that property was not charged with any lien of the estate in favor of the estate, and latest authorities on the question are with us in that position. So as well as on the question whether he was insolvent, the question of whether we knew it or not, either one or both questions, we took those mortgages as we had a right to do as if we were taking them for actual obligations, obligations actually owing us, and it became a race amongst creditors in which the administrator's interests are not paramount to ours. These notes were given to me by Albert Brackey on June 1, 1911, and the mortgage securing the same, and were given to me for the services which had been rendered and to be rendered in the submission of the case of the contest of the will of Alf. T. Brackey. At the time these notes were given, the case had been tried in the district court, and there was some money still owing us for our services. These two notes, Exhibit A and Exhibit B, which were given to me, were taken by me as fees, and I accounted to the firm of Senneff & Bliss for the amount of those notes or $1,500, which was the amount that was owing by Mr. Brackey to the firm of Senneff & Bliss at that time. Of course, I was a member of the firm of Senneff & Bliss. Now at the time that I took this $1,500 mortgage I say that I was not aware that Albert Brackey was insolvent. There was a claim which had been made against him by the administrator. Mr. Brackey always told me, and still does, that he did not owe his father any money and he did not have any money belonging to his father at the time that I took the mortgage he told me then; and I had no reason to disbelieve it and I did not disbelieve it. I knew at that time that if that judgment was lodged against Albert Brackey that he would be insolvent. I knew that if that claim would be established against him that he would not have property enough to pay it and that was— With that thought in mind I took that

mortgage, although I don't know that that would have governed my action, because I told him right in the start, when he first employed us in this litigation, that either our fees would have to be paid and paid promptly, or we would want them secured, because I was not going to devote my time up here trying this litigation and not know that my fees were going to be paid, and he promised that he would do that. At the time I took the first mortgage I knew exactly what Brackey was owing us.

In this connection, it should be stated that Senneff also has a chattel mortgage upon the property of Albert A. Brackey to pay his claims, and the amount and value of the property covered thereby does not clearly appear, although Senneff stated in a general way that it would not be sufficient, he thought, to pay his claim. What the rule would be against a good-faith purchaser from Brackey, knowing nothing of the claim made against him by the representative of his father's estate, we have no occasion to determine. It is enough to say that under the record Senneff was not a good-faith purchaser without notice.

These cases are in equity, and they are both peculiar in their facts; so peculiar as to introduce exceptions to general rules, and this opinion is not to be taken as a precedent for more than is actually decided. The general rules are as appellant's counsel claim them; but, in view of the peculiar facts shown by this record, the equities are so strongly with the representative of the estate that we are constrained to follow the authorities above cited, which introduce exceptions to the general rules, thus meting out full justice to all of the parties.

The decree of the court below must be, and it is—
*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.