## Glass v. Cundiff & Longest.

(Decided January 18, 1916.)

### Appeal from Muhlenberg Circuit Court.

1. Attachment—Contest Between Purchaser and Attaching Creditors.—Where the purchaser of personal property testifies as to the facts of the sale, and it is shown that he at the time paid the money for the property, and that it was delivered to a third party to be sold at retail at a stipulated price, and the same facts are testified to by such third party, and the testimony in the whole case fails to develop any facts looking to the practicing of fraud in any way, in a contest between such purchaser and attaching creditors of the third party, the court should instruct the jury to find the property to be that of the purchaser, there being no proof to the contrary.

2. Evidence—Admissions—Hearsay.—The admission as evidence before the jury of a letter and a receipt, both of which were written by a party not connected with the suit, and the writer not being introduced as a witness, is incompetent, as under such circumstances, the evidence would be hearsay only.

3. Attachment—Liens—Priority.—When an attaching creditor obtains, by his attachment, an equitable lien upon the attached property, such lien must yield to a similar equity acquired prior thereto.

HUBERT MEREDITH for appellant.

TAYLOR EAVES & SPARKS and HOWARD & GRAY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit was filed in the Muhlenberg circuit court on Feb. 19, 1914, by the appellees, seeking to recover the amount of a merchandise account from the Radiant Coal Company for the sum of $389.94, which it was charged the coal company owed appellants for merchandise sold and delivered to it. An attachment was procured, and it was levied among other things upon a car of blasting powder used by the coal company in the operation of its mines, which seem to have been located somewhere near to the town of Drakesboro, Kentucky, in Muhlenberg county. Other property was sought to be subjected by this attachment, but no questions are involved in this case except as to the blasting powder which was attached. Several other suits for minor sums and brought in other inferior courts, and in each of

which the same powder was attached, were transferred to the circuit court and consolidated with the suit of appellees against the coal company in the Mühlenberg circuit court. Judgment went by default against the coal company for each of these debts, and the attachment in each case was sustained as to it, but before the sale of the attached property, or a disposition· of the proceeds, the appellant, Clarence D. Glass, filed his intervening petition in the consolidated cases, in which he claimed that he was the owner and entitled to the proceeds of the blasting powder attached therein, and his petition was taken as his answer. The allegations in it were denied, and upon a trial of the issue as to the ownership of the powder, a verdict was returned adversely to the appellant, and to correct what he insists are errors committed by the court, he has filed a transcript of the cause in this court, and entered a motion to grant him an appeal, the amount involved being more than· $200.00 and less than· $500.00. Upon the trial of the case, the appellant, Glass, introduced himself and one Ruesch as witnesses in his behalf. Without reciting their testimony *in hac verba*, but only in narrative form, it uncontradictorily shows the following facts:

The Radiant Coal Company, of which the witness, Ruesch, was the general manager, was in very much strained financial· circumstances, and on many occasions seems to have been unable to procure the means necessary to the operation of its mine·; that it is necessary in such· mining operations, that the miners should be supplied with blasting powder, and about ten days previous to February 18, 1914, the coal company had ordered a car load of blasting powder from the Miami Powder Company, through its office in Louisville, Ky., and the powder had been shipped to the coal company at Drakesboro, Ky., and a draft for the price. thereof, amounting to $480.20, was attached to the bill of lading and sent to the bank at Drakesboro, which bank, as was the railroad agent at that place, was notified not to deliver the powder until draft was paid. With matters in this condition, Manager Ruesch went to Louisville and conferred with the appellant, Glass, who was a dealer in coal, and had previous to that time been purchasing coal from the Radiant Coal Company, and arranged with him to advance the $480.20, and agreed that the appellant should be vested with the title to the

blasting powder, and that the coal company would furnish it to its miners at the price of $1.75 per keg (it having cost $1.22½ per keg), and that remittance would be made to the appellant from time to time as the powder would be used, at the rate of $1.75 per keg, until it was exhausted. It is furthermore agreed that the coal company might be credited with any coal which the appellant might purchase from it thereafter, and in this way the full value of the powder at the rate of $1.75 per keg might be *pro tanto* extinguished. In accordance with the arrangement, the appellant gave to the powder company his check for $480.20, being the total amount of the blasting powder, and it accordingly turned the car of blasting powder over to the coal company. Both witnesses testified that from that time on the powder was to be the property of the appellant and it was to be sold and disposed of as hereinbefore recited.

To combat the claim of appellant, appellees introduced four witnesses, they being E. H. Flannigan, J. R. Allen, E. H. Newman and Robert Wickliffe; by Mr. Flannigan it was shown that he was the cashier of the bank at Drakesboro, and that he received the draft and bill of lading for the powder with instructions to hold same until it was paid, and that when it was paid he obeyed the instructions of the powder company; and, by the witness, Allen, it was shown some of this powder was used in replacing other powder which had been previously borrowed by the Radiant Coal Company from another coal company; and by the witness, Newman, it was shown that he was the agent of the L. & N. R. R. Co. at Drakesboro, and that after the check had been given for the blasting powder, he delivered same to the Radiant Coal Co., and it was unloaded by Mr. Ruesch, its manager; and, by the witness, Wickliffe, it was shown that he was the sheriff of Muhlenberg county, and that he attached the powder; that he held a conversation over the telephone with Mr. Ruesch, who was then at Drakesboro, after the attachment was levied, but it is not disclosed what the conversation was. It is furthermore shown by the witness that he held a conversation over the telephone with a party in Louisville, but as to whether or not the party was Glass the witness could not state. He said, concerning this: "Well, sir, I was called up from Louisville over the long distance, the long distance wanted me and it was Louisville. I went

to the telephone and they said this was Mr. Glass, from Louisville.'' Subsequently, he says: ''He represented himself to be Mr. Glass; that is all I know, whoever it was; he didn't say what Glass.'' And touching what the party said to him, the witness continues as follows: ''Well, he first wanted to know if he could give bond and take the powder out, and I told him yes. Then he asked me—the first question was, would I take Bob Allen on the bond, and I told him I didn't know, I would have to investigate that first. After I said that he turned around and he says: Well, would a certified check for the amount of the powder suit you? I told him yes. That was all there was to it.''

The appellant denied having held any such conversation with the sheriff from the city of Louisville after the attachment had been served. This was all the testimony for either side, except that Flannigan, the bank cashier, was permitted to introduce a letter written to him by the powder company of date February 18, 1914, whereby it authorized him to return to it the bill of lading for the powder, and in the letter is found this statement: ''The owners of the Radiant Coal Co. have paid us cash for the car of powder and we have given the railroad company instructions to release the car.'' The appellant filed with his testimony, not only the check which he gave to the powder company, but also a receipt which it executed to him for the powder. The letter from the powder company to Flannigan and the receipt of the same company given to the appellant were each irrelevant and inadmissible for any purpose. They were each the boldest kind of hearsay, being merely statements of the persons who wrote the letter and who executed the receipt, out of court, and with no opportunity for cross-examination concerning the contents of either of the transactions about which they purported to relate. However, according to our views, the matters contained in each of them would have been inadmissible if they had been testified to in open court, because the statement in each of them as to the person to whom the powder had been sold is but a conclusion of the writer in the one case, and of the witness in the other case. As to whether or not there was a sale of the powder, and a transfer of the title to appellee, depended upon the facts and not upon the conclusion of any persons. We have here the uncontradicted testimony of Glass

and Ruesch to the effect that this powder was paid for by the former, and with the consent of both the powder company and the coal company, he was vested with the title and he empowered the coal company to sell it at a special price to its miners, and to account to him for the value thereof either in cash or coal. No testimony introduced by appellees created any inference or even suspicion that the transaction was other, or different, than that shown by appellant's proof. The transaction was perfectly in keeping with daily occurrences of a similar nature under similar circumstances and we fail to find, nor has there been pointed out to us, any circumstances calculated to show any fraudulent scheme or fraudulent intention on the part of anybody.

If, however, we were mistaken in this, it is certainly shown that the appellant advanced the money to pay for the powder with the agreement that he should hold the title thereto until he was repaid; this was good between himself and the coal company, and as between it and himself he had a lien upon the powder which would prevail against the attachment lien of appellants, they each having an equity in the attached property, that of the appellant dating from the time of his payment of the money, and that of the appellees from the time of the procuring of the attachment. No rule is better settled in this State than that as between equities, that which is prior in time will prevail. See Ward v. Croty, 4 Met., 60; Pettit v. Banks, 4 Bush, 334; Newby v. Hill, 2 Met., 530; Beard v. Sharp, 23 R., 1582; Wicks v. McConnell, 102 Ky., 434; Clift v. Williams, 105 Ky., 559, and many other cases which could be cited.

It will be observed that the debts of these attaching creditors accrued prior to the creating of the lien of appellant, if this transaction between him and the coal company be adjudged to constitute only a lien in him; or, in other words, they are antecedent creditors. Their debts were not created on the faith of the coal company being the owner of this powder, and in such cases attaching creditors are not classed as bona fide purchasers, or creditors whose claims would prevail against a prior purchase or prior secret lienholder. They have parted with nothing in procuring their lien. They still have their debt and their debtor is still liable to them, whether the attached property be subject to their debt or not. This doctrine has long prevailed in this State, through an un-

broken line of decisions. So that in any view which may be taken of this case, it is manifest that the judgment is erroneous.

The court should have sustained the motion of appellant for a peremptory instruction to find in his behalf. The motion for the appeal is sustained and the appeal granted, and the judgment is reversed for proceedings consistent herewith.