## Collins, et al. v. Blair, et al.

(Decided November 30, 1917.)

### Appeal from Letcher Circuit Court.

1. Tenancy in Common—Adverse Possession.—The entry on land of one joint owner inures to the benefit of all the owners, the legal presumption being that the entry was made according to the right of the party making it, and for the purpose merely of taking possession of his undivided interest. In such a case the possession is not adverse to the other joint owners, and will only become so by a denial of their right or some act or declaration inconsistent therewith, of which they are apprised.

2. Tenancy in Common—Adverse Possession—Evidence.—In an action for partition by certain joint owners against another joint owner, evidence examined and held insufficient to sustain the defendants' claim of title by adverse possession.

DISHMAN, TINSLEY & DISHMAN for appellants.

R. MONROE FIELDS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on the original appeal and reversing on the cross-appeal.

On February 25, 1880, one Aaron Lucas sold and conveyed to John Neal and J. M. Collins a tract of land in

Letcher county. In the year 1881, Neal died, leaving as his only heirs three sisters and one brother of the whole blood and one sister and one brother of the half blood. Thereafter some of these heirs died, leaving children and grandchildren as their only heirs. During the years of 1910 and 1911, Sarah Blair purchased from the heirs of John Neal and their descendants seventeen-one hundred fiftieths of the entire tract. Thereupon she and certain other plaintiffs, who claimed certain interests in the land by inheritance, brought this suit against J. M. Collins, and other descendants of the heirs of John Neal, for a division of the land. The defendants other than Collins filed no answer. Collins pleaded adverse possession against all the parties and champerty against Sarah Blair. In addition to denying the allegations of the answer, Sarah Blair pleaded estoppel against Collins, based on the claim that she was induced to purchase the interests which she bought, by reason of Collins' representations that the heirs of Neal owned a one-half interest in the land. Proof was taken, and on final hearing the petition of plaintiffs other than Sarah Blair was dismissed. Sarah Blair was adjudged a seventeen-one hundred fiftieths interest in the land, while Collins was adjudged the remainder, consisting of one hundred thirty-three-one hundred fiftieths. Commissioners were then appointed to make partition in accordance with the judgment. Collins appeals and the plaintiffs, other than Sarah Blair, prosecute a cross-appeal. Collins has since died and the case has been revived in the name of his heirs.

There was some proof to the effect that John Neal and J. M. Collins were partners, and that upon the death of Neal the partnership was indebted to wholesale houses in the sum of $2,000.00. James P. Harris was appointed Neal's administrator. Joseph Harris, the administrator's brother, purchased from Neal's brothers and sisters their interest in the land in question. The administrator agreed that if Collins would execute a mortgage on his land for $2,000.00, the administrator would pay the partnership debt and Collins' debt to Neal, and would assign the title bonds to Collins. Collins executed the mortgage, and when the mortgage became due he did not have the money to pay the mortgage debt. By an agreement between him and Jasper Collins, Sr., the latter raised the money, paid off the mortgage and the title bonds were assigned to him as security, with the understanding that when the debt was paid by J. M. Collins,

he should have the title bonds. J. M. Collins subsequently paid the debt, but the title bonds were never assigned to him, but were still in possession of Jasper Collins. There was also some proof to the effect that Sarah Blair's husband, who acted as her agent, had notice that the Neal heirs had conveyed their interests. The administrator, when asked if the Neal heirs conveyed by title bonds, merely stated that he thought they did. He further stated, that in the settlement, he accepted less from J. M. Collins than Collins owed the estate of Neal. It further appears that some sort of a suit was brought by J. M. Collins against Jasper Collins in regard to the above title bonds, but the result of this suit is not shown. Dr. John Collins, son of J. M. Collins, testified that he assisted his father to raise the $2,000.00. He further says that he saw the four bonds that were executed, but did not remember the names of the parties who signed them, but it was his understanding that they were some of the Neal heirs.

On the question of adverse possession, J. M. Collins testified as follows:

"Q. Have you or not always claimed the land in controversy since the time you paid off this mortgage of two thousand dollars? A. I have listed it and paid taxes on it, used it and occupied and controlled it independent of anyone else at all times since then. Q. State whether or not you have lived on, used, occupied and controlled this entire boundary of land at all times, claiming it as your own from then until the present time? A. I have not lived on it, but have lived on my adjoining tract within 20 yards of it and controlled it for more than 30 years and have used, controlled it and claimed it as my own for more than 20 years."

W. H. Blair, who acted as agent for his wife in the purchase from the Neal heirs, testified that about a year or two before the purchase, J. M. Collins was living with him and his wife. Someone at the table suggested that Collins ought to give Mrs. Blair a lot to build on. Whereupon Collins stated that he would if he had it in shape, but the land was undivided and the Neal heirs owned a half interest in it, and he could not make a deed to it. He further stated that if he made such a deed, witness would fool it away and let someone in there that he did not want there. J. M. Collins admits making this remark, but claims that he made it because Mrs. Blair and her husband were constantly worrying him about giving them a lot, and he didn't want to be worried any longer.

It is argued on behalf of Collins that not only is there direct evidence to the effect that Neal's brothers and sisters disposed of their interest in the land, but the fact that none of them for a period of over twenty years ever asserted any interest therein, is very persuasive of the truth of the evidence supporting such sale. Hence, it is insisted that Collins' possession, in view of such sale, was sufficiently adverse to apprise them of his hostile holding. It will be observed, however, that the administrator merely stated that he thought the assignments of Neal's brothers and sisters were by title bonds, while Dr. Collins says that four title bonds were executed, but he did not remember the names of the parties. It is admitted that Neal left one brother and three sisters of the whole blood and one brother and one sister of the half blood. Conceding that if the bonds were lost their execution could be proved by parol testimony, still no witness testifies that he was present when the bonds were executed, or that he saw and knew the signatures of the alleged grantors. In other words, it does not appear who signed the title bonds or that the signatures of those purporting to sign them were genuine. It follows, therefore, that the evidence is too vague and uncertain to authorize the conclusion that all or any particular one of Neal's brothers and sisters disposed of their interests in the land in question. Not only is this true, but there is no proof that the alleged title bonds, even if executed, were ever assigned to J. M. Collins. Furthermore, if there is one principle of law well settled it is that the entry on land of one joint owner inures to the benefit of all the owners, the legal presumption being that the entry was made according to the right of the party making it, and for the purpose merely of taking possession of his undivided interest. In such a case the possession is not adverse to the other joint owners, and will only become so by a denial of their right or some act or declaration inconsistent therewith, of which they are apprised. Gossom v. Donaldson, 18 B. Monroe 239, 68 Am. Dec. 723; Johnson v. Myer, et al., 168 Ky. 430, 182 S. W. 190. Here Collins admits that he did not live on the land in question, but merely says that he lived on the adjoining tract, and used, controlled and claimed the land in question as his own for more than twenty years. How he used and controlled the land does not appear. He testifies to no act or declaration sufficient to apprise a joint owner of ordinary prudence that his holding was hostile. On the contrary, not only

did he state to two or three witnesses that the Neal heirs had an undivided interest in the land, but his own evidence is entirely consistent with an amicable holding. Under these circumstances, his claim of title by adverse possession cannot be sustained. It follows that judgment in favor of Sarah Blair was proper, but that the chancellor erred in denying the other plaintiffs the relief prayed for.

Wherefore, the judgment is affirmed on the original appeal and reversed on the cross-appeal for proceedings consistent with this opinion.