## Bailey's Widow and Heirs v. See, et al.

(Decided March 26, 1920.)

## Appeal from Lee Circuit Court.

1. Adverse Possession—Payment of Taxes—Title.—One of several heirs who makes an amicable entrance into the possession of real property, and thereafter lives on the land and pays the taxes for more than the statutory period without bringing to the attention of the other joint owners his claim of exclusive ownership, does not acquire title by adverse possession because the statutes do not run in favor of one joint owner against his fellows, unless such claim of adverse possession is known to the outstanding owners; or the tenant in possession is guilty of such acts as are reasonably calculated to put the other claimants upon notice of his claim to the entire estate.

2. Adverse Possession—Joint Owners—Notice.—A joint owner has the right to enter upon the common property and occupy and use it, and his presence upon the premises is not sufficient to put the other joint owners on notice that he is claiming the whole estate adversely to them.

3. Adverse Possession—Evidence—Letters.—A letter written by one who at the time claims no interest in the property in controversy, but who afterwards upon a trial testifies to facts in support of a claim of adverse possession to the same property, is competent evidence to contradict such witness.

THEODORE BLAKEY and H. L. WHEELER for appellants.

G. W. GOURLEY and SAM HURST for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Old man Martin Bailey acquired a tract of about 100 acres of land on Billie's fork of Miller's creek in Lee county, Kentucky, about the year 1858, and shortly thereafter moved on the place and made his home there for many years. He died in about 1873 but at the time of his death he had moved over off the land and had a job at hauling timber. He was buried on the farm in question and very soon thereafter his widow and family moved back to the old home place and continued to live there for several years. About the same time a son, Frank Bailey, with the consent of his mother, built a house on the same tract of land and made his home there. After all the children became adults and established homes for themselves in other parts of the country, the widow went to visit some of them intending at the time

to shortly return to the old home, but she found it more comfortable to live with her children and she never returned to the old place to make it her home. At the time she left the old place she entered into an arrangement with her son Frank whereby he was to have the use of the place in consideration of his paying the taxes and keeping up the property. Frank principally raised his family on the farm but never paid any rent. He did, however, pay the taxes each year until he was finally confined in the insane asylum at Lexington where he died about 1914. The widow was living with some of her children at Lexington most of the time, and died in that city in 1914. About 1916 oil in paying quantities was found in the vicinity of the land in question, and it suddenly became valuable. Up to that time no one of the heirs had demanded rent nor had Frank so far as the record shows asserted claim to the property by adverse possession as against his brothers and sisters, or at least not to their knowledge. When the land became valuable, however, the other five heirs appeared on the scene, and each claimed a one-sixth undivided interest in the old home farm upon which Frank lived until his death and on which his widow and family were then residing. When the widow and heirs of Frank refused to divide the property with the other heirs of Martin Bailey, these five heirs instituted this action, praying the appointment of commissioners to divide the lands and a division thereof into six equal parts, one-sixth to be allotted to each of the heirs of Martin Bailey. This suit was resisted by the children and widow of Frank Bailey, who filed answer setting up claim to the whole tract by adverse possession, both under the fifteen-year statutes and the thirty-year statutes. After issue was joined the defendants, heirs of Frank Bailey, moved the court for an issue out of chancery, which was granted, and the question of adverse possession was submitted to the jury. The instructions given were prepared and offered by counsel for appellants (defendants below), and the jury returned a verdict, reading as follows: "We the jury agree and find for the plaintiffs the land in controversy, to be divided in six equal parts." On this verdict a judgment was entered in accordance with the prayer of the petition, directing a division in kind of the property into six parts. The heirs of Frank Bailey appeal.

The motion and grounds for a new trial filed by appellants set forth six reasons why the verdict should be set aside, some of which it will not be necessary for us to notice, but we will consider those which appear to have merit. There are more than 350 typewritten pages of evidence, about one-half of which was introduced by plaintiffs below, and the other by the defendants. Without undertaking to review all of this great volume of evidence, suffice it to say that the plaintiffs who claimed five-sixths of the land under their father, Martin Bailey, introduced evidence showing that their father at the time he purchased the land about 1858 obtained from one John Barrett a title bond for 100 acres, but this paper was not placed to record and no deed was ever made by Barrett to Martin Bailey. After this, Bailey occupied the land, claiming it to a well marked boundary for a period sufficient to have vested title in him by adverse possession had he not otherwise owned it. It is shown that he moved away from the place and lived for about one year, but that was long after title was perfected in him even by adverse possession, and when his family returned to the place they took charge of it and claimed and held it as his widow's and heirs'. The son, Frank Bailey, being a sickly man with no home, was permitted to build a house on the place down by a cliff. After he was left there in charge of the place by his mother, he made it his home and cultivated certain parts of the land, and at intervals sold timber from the place, but the selling of the timber was without the knowledge or consent of the other heirs. After living there several years, he rented another place and moved to it for one year and after that returned to the old home place and continued to use and occupy it as before. He gave no notice or intimation to the other heirs or to the widow of a claim of adverse possession by him. He was a tenant in common with his brothers and sisters and had the right to occupy the place. His presence on the place, therefore, was not sufficient to have put the other heirs upon notice of an adverse claim by him to the place. He and his family lived there for about thirty years before the bringing of this action. The statutes of limitation did not begin to run in their favor until they brought to the attention of the other heirs their adverse claim to the whole of the estate and this did not happen until about the year 1916, only a short time before the bringing of

this suit: May v. C. & O. Ry. Co., 184 Ky. 493; Johnson v. Myer 168 Ky. 432; Tippenhauer v. Tippenhauer, 158 Ky. 645; Winchester v. Watson, 169 Ky. 213; Rush v. Cornett, 169 Ky. 719.

If the possession in its origin is amicable it will not become adverse so as to set the statute of limitations in motion, unless the property is in fact held adversely and in such manner as to apprise a person of ordinary prudence that the holding is adverse. Padgett v. Decker, 145 Ky. 227; Cryer v. McGuire, 148 Ky. 100; McGurley v. Venters, 104 S. W. 365; Collins v. Blair, 178 Ky. 120; C. & O. R. R. v. Rosskamp, 179 Ky. 175; Big Blain Oil & Gas Co. v. Yates, 182 Ky. 50; Snyder v. Vinson, et al., 167 Ky. 332.

It is earnestly insisted by appellants that the trial court erred in admitting as evidence a letter dated Greely, Kentucky, November, 1906, and signed "Richard Bailey," because they say that Richard Bailey positively testifies that he did not write the letter, and the letter is not otherwise sufficiently identified and proven as to entitle it to go to the jury. A second reason given is that the letter was not competent even if written by Bailey, because in November, 1906, Richard Bailey owned and claimed no interest or share in the land and was, therefore, not in position to estop his father then living and afterwards his heirs from asserting title to the land by adverse possession by the letter in question. The letter erty."

"November, 1906. Greely, Ky., Dear Grandmow: I thought I would write you a letter as I want to hear from you. This leaves us all well at present. Hoping this letter will find you all well. My father is no better he is about like he has been quite awhile. I want you to see Will Bailey and Aunt Linda and Bud Bailey what they will take for their interest in the old home farm where my father lives and also Aunt Betty, Aunt Nancy to, if you can. I want it for may father and mother to live on. I have a part of the money and mother has the rest, so write me as soon as you can find out about the matter and let me hear from you, as I want to know how you all is getting along. You all know what kind of land it is, and you know it has been worn out years ago, it will only make the old folks a home so long as they live, you can afford to sell it to me cheap as you know just how it is, so write me at the earliest opportunity and as soon as

you can let me hear from you all.   You have my wishes.
Your gandson, Richard Bailey.''

Richard Bailey repeatedly asserts that he did not
write the letter.   On the witness stand he was asked to
write certain words and parts of sentences taken from
the letter, and he did so in the presence of the jury. These
specimens were allowed to go to the jury along with the
letter in question, the court admonishing the jury that
the specimens of handwriting furnished by the witness
could be considered only for the purpose of determining
whether he wrote the letter offered in evidence; and
further that in case the jury should determine that
Bailey wrote the letter it should then determine what ef-
fect, if any, it would give to the letter as evidence.   At
the time of the bringing of the suit Richard Bailey was
one of the claimants of the land, he being a son of Frank
Bailey, the deceased, and a grandson of Martin Bailey,
who originally took the land in 1858.   He gave testimony
to the effect that his father Frank Bailey and family
had lived upon and claimed the land in question adverse-
ly to plaintiffs and all the world for more than fifteen
years next before the commencement of the action.  This
letter of November, 1906, strongly contradicts the state-
ment of the witness made at the trial, and was competent
as evidence for that purpose, if for no other.  If Richard
Bailey wrote the letter in question it is a strong circum-
stance which it was the province of the jury to consider
in determining the claim of adverse possession.

Appellants also complain of the admission of two
other letters, one dated February 20th, and the other
February 28th, 1918, written from Radical, Ky., and
signed by Ann Bailey.   They appear in the record at
pages 222 and 223, and read as follows:

"Radical, Ky., Feb. 28th, 1918.

''Mr. M. B. Bailey:

"I will write you a few lines, you come back and we
will fix up the deed to the old place, I have found the old
bond to it so I will write a few lines to Sue. Hello, Sue,
how are you, all right I hope.   Why didn't you come up
with Bud.   I would love to see you, you must come to
see me, so I will close for this time, from your sister.
                                        "ANN BAILEY.
''So goodbye for this time.''

"Radical, Ky., February 28, 1918.

"Mrs. Malinda See.

"Dear sister: I will write you a few lines to let you know I am well as common and hope when these few lines reaches you that they will find you the same. Malinda, Bud has been here to see us about the old place, he wants us all to divide the old place or lease it. You tell Billie for you and him to come and we will agree on it, and come at once. I am going to write to Bud but if you can get him word, you do so at once, and the quicker the better, before something turns up. They are lawing in this country, come at once and we will have a deed made for it. A deed wont be no 'trouble. I have got everything all ready, so I will close for this time, hoping to hear from you soon, so goodbye, from Ann Bailey."

These letters were written only a short time before the commencement of this litigation and were introduced to show that the widow of Frank Bailey, who lived on the lands with him and who continues to make her home there until this day, acknowledged the right of the other heirs to some share in the property. These letters were also competent as evidence to contradict the witness, Ann Bailey, and were the basis of a plea in estoppel. Aside from these letters, however, there was sufficient evidence to support the verdict of the jury.

As appellants prepared and offered the instructions given by the court to the jury, it will not be necessary for this court to examine the instructions, but we may say that the court properly overruled the motion of appellants for a peremptory instruction at the conclusion of the evidence for the plaintiffs.

Perceiving no error to the prejudice of appellants, the judgment is affirmed.

Judgment affirmed.