## Hazard Coal Corporation et al. v. Getaz et al.

Decided June 20, 1930.)

JESSE MORGAN, F. J. EVERSOLE and L. A. NUCKOLS for appellants.

B. P. WOOTTON, E. C. WOOTON and T. E. MOORE for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Reversing.

John R. Combs (known in the record as Remines Combs), a resident of Perry county, died in the year 1907, the owner of a large boundary of land on Acup creek, waters of Carr's fork of the North fork of the Kentucky river. He left surviving him his widow, Mary Combs, and eleven children, to wit, Melissa, Emily, Sebrina, Riley, John D., Harrison, Perlina, who married Warner Roark, Washington, Bradley, Jane, and McKinley Combs, as his heirs at law. Shortly after the death of her father, Melissa conveyed to her brother Riley her undivided one-eleventh interest in the lands left by her father, On April 5, 1908, Emily conveyed her undivided one-eleventh interest to Logan Combs. On September

27, 1910, Sebrina conveyed her undivided one-eleventh interest to Ford Lumber & Manufacturing Company.

On January 11, 1913, Riley Combs by written contract sold and agreed to convey to R. L. Thomas, his heirs and assigns, the mineral and certain timber interests on two-elevenths of the Remines Combs lands, the one-eleventh inherited by him and the one-eleventh purchased by him from his sister Melissa, and on the same day, by a similar contract, John D. Combs and Harrison Combs sold and agreed to convey to Thomas the minerals and certain timber interest on their undivided interests of one-eleventh each. February 22, 1913, Perlina Combs Roark and her husband, Warner Roark, sold and agreed to convey to Thomas the minerals and certain timber interest in her undivided one-eleventh, and on August 6, 1915, Washington Combs sold and agreed to convey to Thomas the minerals and certain timber interest on his undivided one-eleventh. By mesne conveyances Thomas acquired the interest which Sebrina had on September 27, 1910, conveyed to Ford Lumber & Manufacturing Company in fee. At this time Thomas was the owner in fee of an undivided one-eleventh of the lands left by Remines Combs, and had contracts for the purchase of the minerals and certain timber interests on six-elevenths thereof.

May 11, 1914, Thomas entered into contract with R. D. Baker by which he agreed to sell and convey to him his interests in the Remines Combs lands, and on September 23, 1915, Baker assigned the contract and his right to purchase these interests to D. D. Hull. Prior to the execution of these two writings last above mentioned and on May 27, 1913, Thomas, on the one hand, and Riley, John D., and Harrison Combs, on the other hand, entered into a supplemental agreement by which Thomas agreed to take up and pay for the minerals and timber rights sold to him by the heirs of Remines Combs in all the Remines Combs land to which the title was good and not in dispute as soon as the same could be determined by survey and abstract of the title, and to pay for all the land not in dispute as soon as the title could be perfected. Shortly thereafter W. M. Pursiful, who had been agreed upon for the purpose, surveyed that portion of the land lying on both sides of Acup creek above Old House branch, on the idea that title to that portion of the land was good, or sufficiently good to take up and pay for. The survey showed that this portion of the land con-

tained 542.94 acres. Some difficulty was encountered in securing conveyances from the heirs pursuant to his contract, and in September —, 1916, Thomas instituted suit in the Perry circuit court to which all the heirs of Remines Combs and Logan Combs were made parties along with others who claimed interests adversely, which action was styled R. L. Thomas, plaintiff, v. Mary Combs, etc., defendants. In the petition there was described by courses and distances that portion of the land of Remines Combs lying above the mouth of Old House branch, which had been surveyed and ascertained to contain 542.94 acres, and the other lands owned or claimed by Remines Combs were described or referred to. By this action Thomas sought a partition of the 542.94 acres and a conveyance to him of the minerals and timber rights in and on the shares of those heirs from whom he had purchased. A judgment was duly given in that suit, in which it was adjudged that Remines Combs' heirs were the owners of the surveyed boundary of 542.94 acres and directing partition of that part of the land. There was no adjudication concerning the other lands mentioned and referred to in that petition. Pursuant to that judgment, the commissioners therein appointed for the purpose partitioned the 542.94 acres into 11 lots, and the share which would otherwise have been allotted to Sebrina Combs was allotted to appellant Hazard Coal Corporation by direction of Thomas and his assigns, and the master commissioner of the court, pursuant to proper orders, in the action, conveyed to Hazard Coal Corporation, as the nominee of D. D. Hull, under the assignment to Hull from R. D. Baker of the Thomas contracts, the minerals and timber rights under the six parts allotted to those of the heirs who had sold and agreed to convey to Thomas. By these conveyances appellant became vested with the title in fee to one-eleventh and title to the mineral and timber rights under and on six-elevenths of the 542.94 acres.

In the meantime, however, and on February 27, 1915, E. C. Holliday took from Perlina Roark and her husband a contract by which she sold and undertook to convey to him the minerals and certain timber rights in and on her undivided one-eleventh interest in the Remines coal lands, which contract Holliday subsequently assigned to Stagg Coal Corporation. On August 25, 1915, Holliday took from Riley Combs, John D. Combs, Harrison Combs, and Washington Combs, contracts by which they

each sold and undertook to convey to Stagg Coal Corporation the minerals and certain timber rights on their respective one-eleventh interests in these lands. During the pendency of the suit of R. L. Thomas v. Mary Combs, etc., in the Perry circuit court, D. D. Hull learned of these contracts held by Stagg Coal Corporation, and on May 21, 1917, he procured from that corporation an assignment to him of these contracts for the benefit of three corporations in which he was interested, to wit: Carr's Fork Coal & Land Company (now Hazard Coal Corporation, appellant), Jefferson Land & Improvement Company (now Alimar Coal Corporation), and Virginia Iron, Coal & Coke Company (now appellant Colony Coal & Coke Corporation), and paid to Stagg Coal Corporation therefor the sum of $700.

On March 8, 1919, Bradley Combs conveyed to appellant Hazard Coal Corporation the minerals on that part of the 542.94 acres which had been allotted to him in the partition suit aforesaid and the minerals on his undivided one-eleventh interest in the remaining lands of his father, Remines Combs.

About this time it developed that Logan Combs, who had on April 5, 1908, purchased the undivided one-eleventh interest of Emily Combs, in the lands of her father, Remines Combs, was claiming title to and possession of that portion of the Remines Combs' land lying on Acup creek, below Old House branch, and between the lines of the Jackson G. Combs' 400-acre survey on the east and the dividing ridge between Acup creek and Dote branch and Buckeye creek and Elk fork on the west, and which is the land in controversy herein. So, on July 17, 1919, the heirs of Remines Combs instituted suit in the Perry circuit court to recover that tract of land from Logan Combs. During the progress of that suit an order of survey was entered by the court, and the land in controversy was surveyed by the court's surveyor, A. C. Blair. Under an arrangement between certain of the heirs of Remines Combs and D. D. Hull, he, or his companies, advanced the money to pay the costs of this survey.

While this action was pending, and on April 21, 1923, the appellee Getaz took from Perlina Roark and her husband, Warner Roark, Washington Combs, Riley Combs, and John D. Combs, deeds whereby they sold and undertook to convey to Getaz their respective interests in that portion of the lands of Remines Combs above described as lying on the left-hand side of Acup creek

below Old House branch and between the lines of the Jackson D. Combs 400-acre survey and the dividing ridge between Acup creek and Dote branch and Buckeye creek and Elk fork—the land in controversy—and which is also that part of the Remines Combs lands claimed by Logan Combs.

Subsequent to the taking of these deeds appellee Getaz, without the knowledge or consent of the other plaintiffs in that action, had the suit of Remines Combs' heirs against Logan Combs dismissed. When it was learned that Getaz had taken the four deeds above mentioned, appellant filed this action against Getaz, the heirs of Remines Combs, Colony Coal & Coke Corporation, and the heirs of Logan Combs, setting up its ownership of an undivided one-eleventh interest (that of Sebrina Combs) in fee, and the minerals under and certain timber rights on the undivided five-elevenths interest of Perlina Roark, Riley Combs, John D. Combs, Harrison Combs, and Washington Combs under the contracts executed by them to E. C. Holliday and Stagg Coal Corporation, describing in its petition two parcels or tracts of land as belonging to the heirs of Remines Combs, in which it claimed those interests (the first of which is the tract now in controversy, and the second of which, while disposed of by the judgment appealed from, is not affected by this appeal), asking that the land be partitioned allotting to it the one-eleventh which it had acquired from the vendees of Sebrina Combs, and allotting to Bradley Combs his one-eleventh and adjudging it the owner of all the minerals and certain timber rights thereon; allotting to Riley two-elevenths, to John D. one-eleventh, to Washington one-eleventh, to Harrison one-eleventh, and to Perlina one-eleventh, and that it have specific performance by these last five heirs of the contracts executed by them to Holliday and the Stagg Coal Corporation; and allotting to Jane one-eleventh, to McKinley one-eleventh, and to the heirs of Logan Combs (who had died in the meantime) one-eleventh; asking also that the deeds from Riley, John D., and Washington Combs and Perlina Combs Roark to appellee Getaz be canceled and set aside, and Getaz adjudged to have no interest thereunder in the lands described, and that he be required to convey to it the minerals and timber rights covered by its contracts and embraced in the aforesaid deeds to him. It alleged in the petition that Colony Coal Corporation had or was

claiming some interest in the two tracts of land described in the petition, made it a party thereto, and asked that it come in and set up the interest claimed by it in the land.

All the defendants, except Colony Coal & Coke Corporation, filed an answer and counterclaim wherein they alleged: (1) The execution and delivery of the contracts from those of the heirs of Remines Combs who sold their respective interests to R. L. Thomas, and alleged that these Thomas contracts were in full force and effect at all times thereafter; (2) that the contracts taken by Holliday and Stagg Coal Corporation sued on by appellant were void and of no effect, and that appellant acquired no right thereunder, because said contracts were executed in fraud of the rights conveyed by the Thomas contracts; (3) that because of the suit brought by Thomas against the heirs of Remines Combs to enforce those contracts, and the judgment therein partitioning the 542.94 acres, the deeds of partition executed thereunder were a substantial performance of the Thomas contracts and were so accepted by Hazard Coal Corporation; that it was estopped from relying on the Thomas contracts as to the land in controversy, because they had been substantially performed, or to rely on the Stagg contracts because they were void; and pleaded the judgment and all matters that might have been adjudicated in the suit of Thomas v. Mary Combs, etc., as a bar to Hazard Coal Corporation's right to recover any property under either set of contracts in this action.

Colony Coal & Coke Corporation filed its answer, counterclaim, and cross-petition, in which it pleaded an agreement between D. D. Hull and appellant and its predecessor in title, Virginia Iron, Coal & Coke Company, by which Hazard Coal Corporation was to take under the contracts of purchase from the heirs of Remines Combs that part of the land lying on the left-hand side of Acup creek above Old House branch, and it (Colony Coal & Coke Company) was to take all thereof lying below Old House branch on both sides of Acup creek and on the right-hand side of Acup creek above Old House branch. It set up all the facts relating to the execution of the Thomas contracts, and alleged that it was entitled thereunder to be adjudged the owner of the one-eleventh interest of Sebrina Combs and to have the same allotted to it, and was entitled to the minerals and timber interests in the one-eleventh interest of Bradley Combs, the two-elevenths interest of Riley Combs, the one-eleventh interest

of John D., Harrison, and Washington Combs, and Perlina Roark in the land described in the petition and the agreement aforesaid, and was entitled to have those interests conveyed to it by the master commissioner.

By amended answer Getaz and the heirs of Logan Combs alleged that at the time of the execution of both the Thomas and Stagg Coal Corporation contracts, Logan Combs was in the actual adverse possession of the first tract described in the petition—the land in controversy—and that his heirs had continued in such possession at all times since, and for that reason both the Thomas and Stagg Coal Corporation contracts were champertous and void.

The issues raised by these answers and amended answers were completed by subsequent pleadings, and upon proof taken the case was submitted to the chancellor and judgment rendered, in which it was found and adjudged:

(1) That the Stagg Coal Corporation contracts were unenforceable and void because the parties grantor thereto had previously contracted for the same land with R. L. Thomas.

(2) That the Thomas contracts had been substantially performed by the judgment and deeds of partition executed in the case of Thomas v. Mary Combs, etc., by which 542.94 acres was partitioned; and in so far as the petition of appellant and cross-petition of Colony Coal & Coke Corporation sought specific performance of the Stagg and Thomas contracts, both pleadings were dismissed.

(3) Adjudging to Colony Coal & Coke Corporation the minerals and timber on the second tract described in the petition (it is not appealing from this part of the judgment and there is no cross-appeal), and adjudging that appellant is the owner of an undivided one-eleventh interest in the surface of that second tract and that Jane Combs was the owner of one-eleventh and appellee Getaz and the heirs of Logan Combs were the owners of nine-elevenths of the surface.

(4) The judgment recites that there was a controversy between appellants and appellees as to the location of the northern boundary line of the tract first described in the petition, the tract in controversy on this appeal that is, the tract lying between Jackson Combs' 400-acre survey and the dividing ridge between Acup creek and Dote branch and Buckeye creek and Elk fork. It was

adjudged that the northern line of that tract runs from a point on the line of the Jackson Combs survey between the fifteenth and sixteenth corners thereof to a low gap in the ridge near the head of Buckeye branch and near the intersection of Logan Combs' fence with the ridge and the gap.

(5) It is further recited in the judgment that there was a controversy between the parties appellant and the parties appellee as to the location of the William Evans 200-acre survey of August 3, 1850. The judgment locates this survey according to its course and distance calls from the beginning corner, which corner is adjudged to be on the point of a ridge between Bear Pen fork of Buckeye creek and the main Buckeye creek at a point shown on the map made by A. C. Blair, marked "White Oak Stump and Sourwood Stump" in blue letters, and from that point, in accordance with the location shown by the blue lines and figures 1, 2, 3, 4, 5, and 6.

(6) It was further adjudged that the land in controversy at the time of the execution of the Thomas and Stagg Coal Corporation contracts was in the actual adverse possession of Logan Combs, and for that reason both sets of contracts were champertous and void.

(7) It was further adjudged that as to this parcel of land in controversy, Logan Combs and his heirs had matured title thereto by actual adverse possession. Hazard Coal Corporation and Colony Coal & Coke Corporation, to the extent hereinabove indicated, have both appealed, insisting, first, that the court erred in holding the Stagg Coal Corporation contracts inequitable and unenforceable.

It may be conceded that, in a contest between the Thomas contracts and the Stagg contracts, the latter could not be enforced, under the rule that as between equities the one prior in time will prevail. Lexington Brewing Co. v. Hamon, 155 Ky. 711, 160 S. W. 264; Glass v. Cundiff, etc., 167 Ky. 760, 181 S. W. 638. For that reason and to that extent alone the Stagg contracts were unenforceable; but when the Stagg contracts passed into the hands of the holder of the Thomas contracts, that rule would no longer obtain. The rule ceases when the reason for it ceases. Even though these Stagg contracts could not have been enforced as against the Thomas contract, no legal reason has been, and we apprehend none can be, suggested as would prevent the holder of the Thomas contracts from buying his peace, rather than

incur the expense of time and money litigating the validity of the Stagg contracts. Such a course has been pursued in this case, and we are unable to understand upon what principle of equity appellee Getaz, who has acquired the rights he is asserting herein in the face of both sets of contracts and with actual knowledge of them, can complain. He insists, however: (a) That these Stagg contracts are lacking in mutuality and (b) that they are tainted with fraud. The lack of mutuality is not claimed upon the face of the contracts, but because of the fact that the vendors therein had previously sold the minerals, the subject of the contracts, to Thomas, and that the contracts could not be enforced without the consent of Thomas. Conceding this to be true, a sufficient answer to this contention is that, at the time of the institution of this suit, the holder of the Thomas contracts also held the Stagg contracts, and held both for the use and benefit of appellants to the extent shown by their respective pleadings. The fraud with which it is claimed the Stagg contracts are tainted is that the contracts were taken, not for the purpose of enforcing them, but for the purpose of persuading the Combs heirs to oppose the performance of their contracts with Thomas. If this be true, it should not affect Hull or appellants. There is no proof connecting Hull with these Stagg contracts or imputing to him any knowledge of them until after their execution and shortly before he acquired them. In their acquisition Hull stood in the same position he would occupy in acquiring any other outstanding adverse title affecting the land and his interests therein.

The next ground of complaint is that the court erred in holding that the Thomas contracts were substantially performed by the partition of the 542.94 acres and execution of the deeds to appellant pursuant to the judgment in the case of Thomas v. Combs, etc. To sustain the judgment in this particular it is contended by appellees that, ordinarily, an action for specific performance must include the entire contract; but relying upon 25 R. C. L. 248, where it is said that a vendee, in an action brought by him for specific performance, may waive the performance on the part of the vendor of portions of his contract and elect to take partial performance if he himself is willing to fully perform, insists that as, under the supplement contract of May 27, 1913, between Thomas and some of the Combs heirs, by which Thomas agreed to take up and pay for all the mineral and timber rights

"to all the land and in all that part of the land to which the title is good and not in dispute so soon as it can be ascertained by a survey and abstract thereof," the surveying of the 542.94 acres, examination of title thereto, and institution of the suit to partition that portion only, and to require the heirs to perform their contract as to that portion only, was an election upon the part of Thomas and of appellant as his successor to take that much land in satisfaction of his contracts, as being all the land to which the title was good and not in dispute, and was an abandonment by Thomas of his contracts as to the balance of the land.

Ordinarily, an action for specific performance should include the entire contract; but an examination of the supplemental contract of May 27, 1913, between Thomas and the Combs' heirs, shows clearly that it was realized by the parties to it that title to a part of the Remines Combs land was probably defective, and that while payment might be delayed in curing defects and in litigation had for the purpose of settling the title still those matters should not prevent payment for so much of the land as to which there was no controversy as to title. That such was the purpose of that contract is, we think, made clear by the subsequent acts of the parties. There was no attempt in that partition suit upon the part of the Combs heirs to partition the balance of the Remines Combs land, nor any offer to perform their contracts of sale as to the balance of the land, nor to require Thomas to accept and pay for any more of the land than the 542.94 acres. Could their failure to contend for these rights be construed as, or held to be, a disclaimer by them of title to the land outside the 542.94 acres? Obviously, it could not. Upon the same reasoning it ought to be held that the failure of Thomas to ask for partition of all the land and to enforce his contracts upon all the land was the result of the supplemental contract, and was not a waiver of his rights as to the balance of the land, or an election to accept the 542.94 acres in satisfaction of his claims, or an abandonment of his contract as to the remainder of the land.

On the other hand, by their respective contracts Perlina Roark, Riley, John D. and Harrison Combs sold and agreed to convey to Thomas "all their rights, title and interest in all the mineral . . . upon the land of what is known as the Remines Combs land . . . situate in Perry County, Kentucky, on Acup Creek bounded

by lands of Sampson Combs, Ed Combs, Mrs. Godsey, Jas. Stacey, Alex Smith, Adeline Combs and William Smith." By his contract Washington Combs sold and agreed to convey "his entire undivided interest" in all the lands owned by his father at the time of his death "on Acup Creek in Perry County." Sebrina Combs conveyed "all her undivided interest in the lands of her father, Remines Combs, on Acup Creek of Carr's Fork of the north fork of the Kentucky river in Perry County, Kentucky." By these contracts Thomas obtained the equitable title to these undivided interests in all the land of Remines Combs on Acup Creek. There is nothing in this record upon which a court could determine, as a fact, that by the action to partition the 542.94 acres and to have specific performance of his contracts as to that much of that land, Thomas had abandoned his contracts as to the remainder, or that he had elected to take this acreage in satisfaction of the whole. The allegations of Thomas' petition dispute the assertion, and it is refuted by appellants' subsequent act in purchasing from Bradley Combs not only the one-eleventh allotted to him in the partition suit, but also his undivided interest in the lands not partitioned, and in the further fact that after the institution of the suit of Remines Combs' heirs v. Logan Combs, July 17, 1919, for the purpose of recovering ten-elevenths of the land in controversy, D. D. Hull, on behalf of appellants, advanced for these heirs the sum of $332.80 to pay the costs of carrying out the order of survey entered by the court.

It is next complained that the court erred in locating the northern boundary line of the land in controversy as running from a point in the line of the Jackson G. Combs 400-acre survey between the fifteenth and sixteenth corners thereof, to a low gap near the head of Buckeye branch and near the intersection of Logan Combs'. fence with the ridge and that gap. The record does not sustain this location of that line. On December 21, 1905, in an action pending in the Perry circuit court wherein Remines Combs was plaintiff and Logan Combs was defendant, involving the land in controversy in this action, Remines Combs was adjudged to be the owner. Subsequently, in the action of Remines Combs' heirs against Logan Combs, in the same court, involving the same tract of land, an order was entered on May 15, 1920, directing A. C. Blair to go upon the ground and locate and run out by metes and bounds that tract of

land. This was done, and Blair filed a report of survey December 14, 1921, with a map of the land as located by him. In this report he shows that the defendant Logan Combs met him on the land and was present during the surveying of and locating the boundary. His report and map locate the northern line of the boundary and the gap called for by that line. This gap is at the head of Old House branch of Acup creek, and the northern line of the boundary as located by that report and map runs from that gap, down Old House branch, to a stake in the fifteenth line of the Jackson G. Combs 400-acre survey. Logan Combs was a party to the action in which that report was made. He was present when Blair made the location, and no contention was made by him at the time of the survey, or afterwards by way of exception to the report, or otherwise, that it was not correct. His silence when he should have spoken is strongly corroborative of the correctness of Blair's location. Appellee and those of Remines Combs' heirs who executed deeds to him fixed this gap and this northern boundary line at precisely the same location. The lines of the boundary called for in those deeds run to "the gap in the mountain at the head of Old House Branch; thence down Old House Branch." Appellee is bound by the deeds under which he claims. Brandenburgh v. Three Forks Deposit Bank, 45 S. W. 108, 19 Ky. Law Rep. 1974; Norton v. Sanders, 7 J. J. Marsh. 12.

We are unable to see how the location of the William Evans 200-acre survey of August 3, 1850, is necessary to a determination of the question before us, and certainly the trial court should not have undertaken to locate this survey without having before the court all parties whose interests might be affected thereby. See section 28 of the Civil Code of Practice. Therefore that part of the judgment that relates to the location of this survey is reversed; that question is left open and shall not be determined without all parties, whose interests may be affected thereby, being before the court.

At the time of the execution of the Thomas and Stagg Coal Corporation's contracts, Logan Combs was the owner of an undivided one-eleventh interest in the land in controversy which he had acquired from Emily Combs, a daughter of Remines Combs, by deed dated April 5, 1908, a little more than two years after Remines Combs had recovered the land from Logan Combs by

judgment of the Perry circuit court. By his acquisition of that undivided interest and the deed he took therefor, Logan Combs became a tenant in common with the other heirs of Remines Combs. Any possession thereafter maintained by him was the possession of all, and could not become adverse to them until some overt act upon his part as would bring notice to them that he was claiming the whole adversely. Bates v. Adams, 182 Ky. 100, 206 S. W. 163; Bailey v. See, 187 Ky. 596, 219 S. W. 1061.

The fact that in 1898 Logan Combs obtained a patent in his own name covering most of the land in controversy cannot alter the situation. The granting of that patent may be, and probably was, the cause of the lawsuit between Remines Combs and Logan Combs. At any rate, that litigation resulted in a judgment rendered December 21, 1905, in favor of Remines and against Logan, and the latter was perpetually enjoined from clearing, injuring, molesting, or trespassing . upon the land. Clearly no right to it by possession had matured in Logan Combs on April 5, 1908, when he became a tenant in common by the purchase of Emily Combs' share. The purchase of this undivided interest rendered it unnecessary to evict Logan by a writ of possession under the judgment against him. The Thomas and Stagg contracts having been taken in 1913 and 1915, the possession of the land in controversy then maintained by Logan Combs was the possession of all the joint owners, including the grantors in those contracts, and was not an adverse possession in Logan. Consequently, the contracts were not champertous. Perry v. Eagle Coal Co., 170 Ky. 824, 186 S. W. 875. The only overt act upon the part of Logan Combs, tending to support the claim of his adverse possession of the land in controversy, is that shortly prior to July 17, 1919, four of the sons of Remines Combs went upon the land in controversy for the purpose of putting a portion of it in cultivation, when Logan shot and wounded all four of them. On that day the heirs instituted their suit styled J. R. Combs, etc., Plaintiffs, v. Logan Combs, Defendant, hereinbefore referred to. If it be conceded that Logan actually maintained the adverse possession of the land from the date of the judgment obtained against him by Remines Combs on December 21, 1905, the possession was more than a year short of the statutory period at the time that suit was instituted. Nothing less than 15 years' actual, continu-

ous, adverse possession will bar the right of entry of the real title holder.

The claim of title and possession upon the part of Pearl Combs, referred to in the evidence, and treated of in the briefs, is not affected by the judgment herein and will not be affected by the judgment to be rendered pursuant to this opinion. He is not a party to this action. For that reason no other or further notice of him has been or will be taken.

There can be no doubt from this record, and the testimony of Mr. Getaz himself, that he made his purchases from Perlina Roark, Washington Combs, Riley Combs, and John D. Combs with his eyes open to the Thomas and Stagg contracts; the record indicates that he bought into this controversy in the hope, probably in the belief, that he could take advantage of what he conceived to be infirmities in appellants' contracts, or apparent defects in the title of Remines Combs to the land in controversy. In either event, or from whatever motive he made his purchases, he is not an innocent purchaser, nor has he come into this court with clean hands. The rule that he who comes into equity must come with clean hands, applies as well to a defendant who seeks affirmative relief as to a plaintiff. Commonwealth, for Use, v. Filiatreau et al., 161 Ky. 434, 170 S. W. 1182.

The appellants Hazard Coal Corporation and Colony Coal & Coke Corporation have some agreement with each other for the partition between them of what is allotted to them with which we are not concerned, but they are entitled to have this property partitioned and to have their contracts enforced, and it shall be done by allotting what was inherited by the children of Remines Combs among the parties thus:

One-eleventh to appellants as vendees of Sebrina Combs.

One-eleventh to Jane Combs as her share.

One-eleventh to McKinley Combs as his share.

One-eleventh to heirs of Logan Combs, vendees of Emily Combs.

One-eleventh to Harrison Combs as his share.

One-eleventh to Bradley Combs as his share,

One-eleventh to James L. Getaz as vendee of Melissa Combs.

One-eleventh to James L. Getaz as vendee of Riley Combs.

One-eleventh to James L. Getaz as vendee of John D. Combs.

One-eleventh to James L. Getaz as vendee of Perlina Combs.

One-eleventh to James L. Getaz as vendee of Washington Combs.

Appellants have contracts by which they are to get certain mineral and timber rights under, on, and appurtenant to the eight-elevenths last mentioned, and these contracts entitle them to have such timber and mineral interests allotted to them.

Getaz, by his purchase of the shares set out above at a time when recorded contracts affecting those shares were in the hands of appellants, of which he had both constructive notice and actual notice, took such shares as he so purchased subject to those contracts; he merely stepped into the shoes of the parties from whom he bought, and took his deeds subject to those contracts, and will have to endure and comply with them, and of course Harrison Combs and Bradley Combs must endure and comply with the contracts they made.

In his deposition Getaz claims to have purchased the interests of Jane Combs and McKinley Combs, but there have not been any deeds filed in this record manifesting such purchases. If he shall file such deeds or official copies thereof, then the shares of Jane Combs and McKinley Combs shall be laid off to him.

Getaz has made some conveyances to some of his coappellees, and the court will, so far as it can without impairment or abridgment of the rights of appellants, protect such vendees of Getaz in this partition.

Wherefore the judgment is reversed for proceedings consistent with this opinion.